No. 44,623

CLIFFORD W. AGEE, *Appellee,* v. KANSAS HIGHWAY COMMISSION
MOTOR VEHICLE DEPARTMENT, *Appellant.*

(422 P. 2d 949)

174

Opinion filed January 21, 1967.

John Cooper, of Topeka, argued the cause, and Robert C. Londerholm, Attorney General, was with him on the brief for the appellant.

No appearance for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This case involves the construction of a portion of the Motor Vehicle Safety Responsibility Act (herein designated as the Act), which was passed at the 1957 session of the Legislature, and now appears as K. S. A. 8-722 to 769, inclusive. As stated in its title, the Act is designed to eliminate the reckless and irresponsible driver from the highways of this state by requiring deposit of security and proof of financial responsibility by persons owning or driving motor vehicles under certain specified circumstances.

For purposes of this opinion, a detailed analysis of the entire Act is unnecessary. A brief resumé of pertinent statutes, as they affect this case, will suffice.

Under the provisions of K. S. A. 8-523 (which is not a part of the Act), every motorist involved in an accident resulting in personal injury to or death of any person, or total property damage to an apparent extent of more than one hundred dollars ($100), is required to report the same within twenty-four hours to the Motor Vehicle Department of the State Highway Commission (hereafter called the Department). K. S. A. 8-726 (a) provides that upon the expiration of twenty days after receipt of the accident report, the Department is to determine the amount of security which shall be sufficient, in its judgment, to satisfy any judgment or judgments for damages resulting from the accident as may be recovered against each driver or the owner of each vehicle involved in the accident, except that no determination shall be made with respect to drivers or owners who are exempt from the Act's requirements as to security or suspension. Among those excepted from such requirements are individuals having liability policies or bonds which comply with the provisions of K. S. A. 8-728 and K. S. A. 1965 Supp., 8-729.

It is further provided in K. S. A. 8-726 (b) that within fifty days after receipt of the accident report, and after the Department has made its determination, the Department shall notify every person required to give security of the amount required and shall advise such persons that an order of suspension will be entered after ten

days shall have expired from the date the notice is sent, unless within that time the required security is deposited.

If either the driver, or the owner, fails to deposit the security as required, the Department is directed by K. S. A. 8-727 to suspend the license of each driver involved in the accident and the registration of all vehicles owned by the owner of each vehicle involved.

From a procedural standpoint, the Act (K. S. A. 8-723) provides for a hearing upon the written request of any person aggrieved by the Department's order. The hearing shall be held before a duly authorized agent of the Department within twenty days after the request is received and in the county where the requesting person resides, unless another county is agreed upon. Within five days after the hearing, the agent shall file his findings and final order with the Department and send a copy by registered or certified mail to the requesting person.

Within thirty days after receiving notice of such final order, the person aggrieved may file a petition in the district court of his residence for a trial *de novo* to determine whether the order is lawful and reasonable. The filing of such a petition does not suspend the order unless the judge orders a stay, pending final determination. The court shall summarily hear the petition and may make any appropriate order.

With this short sketch of relevant statutory provisions as a background, we turn to the undisputed facts of this case.

On June 19, 1965, the petitioner, Clifford W. Agee, who is the appellee herein and to whom we shall hereafter refer as petitioner or Agee, was involved in a vehicular accident in Kansas City, Kansas, which resulted in property damage of more than one hundred dollars ($100). The accident report was apparently sent to the Department as the statute directs. The Department, upon being advised that Agee was not protected by liability insurance, issued an order requiring security to be deposited by Agee and, by certified letter dated July 30, 1965, advised him of the amount to be deposited or his license would be subject to suspension.

Upon Agee's failure to deposit the security as required, the Department, on August 25, 1965, issued an order of suspension. Thereupon, Agee filed a written request for a hearing, and a hearing was held on October 20, 1965, before a duly authorized agent of the Department. The initial order of suspension was sustained by the

agent upon Agee's admission that he was involved in the accident and had not complied with the requirements of the Act.

Thereafter, and on November 18, 1965, Agee filed a petition in the district court of Wyandotte County, Kansas, appealing from the suspension order. On the same date, the Wyandotte County District Court heard the matter *ex parte* and summarily vacated and set aside the order of suspension. The Department had no notice or actual knowledge of those proceedings and was not represented at the hearing.

Upon learning of the action taken by the court, the Department requested a pre-trial hearing. This request was granted and on December 7, 1965, a "pre-trial and trial" was held, as a result of which the court affirmed its prior judgment of November 18 and ordered the Department to reinstate Agee's driving privileges and restore his driving and motor vehicle licenses.

The Department has appealed from both the judgment of November 18 and that of December 7. Unfortunately, Mr. Agee has made no appearance in this appeal, either by counsel or in person, and we have not had the benefit of a presentation of his side of this controversy. We have endeavored, nonetheless, to view this case with objective detachment and to give appropriate consideration to the petitioner's position, as we see it.

Before stating the question raised by the Department on this appeal, we would point out that while 8-723, *supra,* provides that a petition for a trial *de novo* shall be heard summarily, that statute does not dispense with the giving of notice to the Department. The matter is to be heard *de novo,* not *ex parte,* and the action of the district court, in hearing Agee's petition without notice to the Department, was clearly erroneous. However, the error is deemed to have been cured by the hearing which was later held at the Department's request.

The question presented by the Department for our decision, if we may paraphrase the language used, is whether the existence or nonexistence of fault or liability for an accident is to be considered in determining whether the driver or owner of a motor vehicle is required to comply with the security provisions of the Act.

This question arises because of certain allegations contained in Agee's petition and certain findings made by the court. The petition alleges (1) the collision was in no way caused or contributed to by any fault of the petitioner, and (2) the petitioner could not

obtain releases from other parties involved in the collision and, further, was unable to provide the security required by the Department. In a separate paragraph, Agee complained of the hardships he would suffer by being deprived of the use of his vehicle and the right to operate the same.

At the *ex parte* hearing of November 18, 1965, the court found that "the allegations of facts set out in the petition are true," and at the later hearing of December 7, 1965, found "generally in favor of the petitioner" and that its earlier "judgment and decree . . . should be made permanent." These findings are reflected in the two journal entries of record.

This court has not heretofore been called upon to decide whether the issue of fault or liability is material in deciding whether the driver or owner of a motor vehicle is subject to the provisions of the Act and his license liable to suspension. Our study, however, has disclosed that in the great majority of jurisdictions where the question has arisen, the courts have held that it is not for the suspending agency to determine fault or to ascertain who caused the accident. The ascertainment of civil liability for damages, resulting from an accident, is a judicial function to be exercised by a court of law in an action brought for such purpose. A few examples will sufficiently illustrate the predominant trend of judicial thought.

The State of Louisiana has adopted a Motor Vehicle Safety Responsibility Act containing provisions similar to ours for suspending an operator's license. In rejecting an argument that the Department of Public Safety (which administers that act) was required to determine fault before suspending a license, the Court of Appeals, in *Hughes v. Department of Public Safety* (1955), 79 So. 2d 129, said:

"We feel that logical construction of the state as a whole does not admit the conclusion that predetermination of the operator's fault in the accident is a prerequisite to suspension either of the operator's license or of the owner's registration. Legal liability by reason of fault must necessarily be determined judicially in proceedings for monied judgment between the parties.

"Thus regardless of whether Miss Hughes was free from fault or not, if she was uninsured at the time of the accident and does not post bond as required by the Act, her license as operator must be suspended, and also her registration as owner." (p. 132.)

In *Gillaspie v. Dept. of Public Safety*, 152 Tex. 459, 259 S. W. 2d 177, the Texas court, in construing a section of the Texas Motor Vehicle Safety-Responsibility Act, comparable to K. S. A. 8-726, stated:

". . . it is the duty of the Department to determine the amount of security and to suspend the licenses and registrations of operators and owners involved in the accident without undertaking to ascertain who was at fault or who may be liable for damages. . . ." (p. 466.)

Under the provisions of a Financial Responsibility Act analogous to our own, the Supreme Court of Michigan has said in *Larr v. Secretary of State*, 317 Mich. 121, 26 N. W. 2d 872:

"The secretary of State has no authority to pass upon the question of negligence or freedom from negligence. He has no discretion, but is obliged to act as the law provides. If the penalty is harsh as to innocent parties, the relief sought must come from the legislative branch of our government." (p. 126.)

A case much like one the one before us is *Franklin v. Scurlock, Comm. of Rev.*, 224 Ark. 168, 272 S. W. 2d 62. The section of the Arkansas Act pertaining to suspensions largely parallels our own. In *Franklin*, an order was issued by the Commissioner of Revenue suspending the licenses of two drivers. Both drivers appealed to the Circuit Court where, at an *ex parte* hearing, they each testified that they were in no way to blame for the accident which had occured. Notwithstanding this evidence, which was uncontradicted, the Circuit Court upheld the Commissioner's action. In affirming the Circuit Court's decision, the Arkansas Supreme Court said:

". . . If the order of the Commissioner suspending the licenses could be set aside merely by showing that the operators of the automobiles were not negligent, the Act would be nullified because the issue as to negligence would come before the Commissioner only in those cases where the automobile owner or operator has no liability insurance; and the fact that he is without insurance would strongly indicate that he is judgment-proof. Hence no one would be interested in procuring and presenting to the Commissioner or the court evidence showing the liability of the operator of the automobile, and the Act would have no practical effect whatsoever." (pp. 169, 170.)

Upon oral argument of this appeal, counsel for the Department cited two cases, *Escobedo v. State of California*, 35 C. 2d 870, 222 P. 2d 1, and *Schecter v. Killingsworth*, 93 Ariz. 273, 380 P. 2d 136, as being opposed to the general view. Insofar as these cases can be said to conflict with the prevailing rule, we decline to follow them.

The language found in *Ballow v. Reeves* (Ky. 1951), 238 S. W. 2d 141, is germane to our discussion.

"The question of negligence has nothing to do with the matter. The requirement of financial responsibility does not in any sense pre-determine the question of liability, which could only be decided in a judicial proceeding. It simply furnishes an added protection to the public and better assures the safety

of our highways, and is not dependent upon the operator's skill or lack of it. ·. . ." (p. 142.)

We believe the foregoing quotation brings into true focus the end sought to be achieved by our own and other Motor Vehicle Safety Responsibility Acts. These Acts are not designed to provide a forum in which private litigants may test their respective civil liabilities, one against the other. Their purpose is to benefit the public, generally, by decreasing the perils of highway travel and by affording protection to persons who may have claims arising out of highway accidents (*Sullivan v. Cheatham,* 264 Ala. 71, 84 So. 2d 374.)

We might add at this point that our Act contains provisions for relieving a person, otherwise liable, from the necessity of depositing security when he has either been released from liability by the other parties to an accident, been adjudicated not liable in a court of law, or has entered into a written agreement for payment of all claims arising from an accident (See K. S. A. 8-731, 732.)

Should any doubt persist that our Act was not intended to vest in the Department the power to examine into the matter of civil liability, that doubt should be dispelled by K. S. A. 8-738. This statute provides in substance, so far as material to the problem we are now discussing, that no action of the Department, nor the findings, if any, on which its action is based, nor the security filed under the Act, shall be any evidence of the negligence of either party at the trial of a legal action for damages.

It is evident that the trial court's action was predicated on the grounds set out in Agee's petition, for the court specifically found the factual allegations of the petition were true. The court also found generally in favor of the petitioner on December 7, but that finding must be related to the issues framed by the petition. A court cannot go beyond the issues of fact tendered in an action and make a finding on matters which exceed those issues (*In re Estate of Grove,* 158 Kan. 444, 148 P. 2d 497).

The district court was required by the Act to conduct a trial *de novo.* In hearing the case anew, the court could not transgress the bounds of the Act itself and inject extraneous matters for consideration. The court's position would seem analogous to that of a court in hearing an appeal *de novo* from a justice of the peace (*Woodworth v. Maddox,* 115 Kan. 445, 223 Pac. 275), where the powers exercised would be assimilated to those of the court from which the appeal arose.

In our opinion, none of Agee's allegations were material to the question confronting the trial court. We have already said that fault has no place in determining whether security is to be posted or a license is suspended. Although this was the only issue pressed by the Department in this appeal, the other allegation of Agee's petition demand brief attention.

A second ground alleged for vacating the suspension order was that Agee could neither obtain releases from the other parties to the accident nor provide the security required. This argument is pure sophistry. The provisions of the Act requiring security are directed against just such an individual. Inability, either to secure releases from others involved in the accident, or to provide security as required by the Department, is cause for entering an order of suspension, not for vacating one.

Finally, hardship resulting from the suspension of a license, or of a vehicle registration, constitutes no defense to an order suspending either one or both of them. It is established law that the right to operate a motor vehicle upon public streets and highways is not a natural right, but a privilege, subject to reasonable regulation in the public interest. (*Lee v. State*, 187 Kan. 566, 358 P. 2d 765; *Marbut v. Motor Vehicle Department*, 194 Kan. 620, 400 P. 2d 982; *Larr v. Secretary of State*, supra.) Being a privilege, the right of operation is subject to suspension when the public interest and welfare reasonably requires. Personal hardship has no bearing on the matter. It is self-evident that Agee's complaint of harmful consequences to himself and family furnishes no ground for vacating the Department's order.

For the reasons set forth in this opinion, the judgment of the trial court is reversed with directions to enter judgment for the Department.