No. 45,552

RONALD R. MILLER, a Minor by and through His Mother, Natural Guardian and Next Friend, *Appellee,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, *Appellant,*

and

JAMES W. JACKSON, JR., a Minor, and JAMES W. JACKSON, SR., as Parent, Natural Guardian and Next Friend of said Minor, and JAMES W. JACKSON, SR., Individually, *Defendants.*

(466 P. 2d 336)

Opinion filed March 7, 1970.

*J. Milton Sullivant,* of Kansas City, argued the cause, and *Lewis C. Smith,* of Kansas City, was with him on the briefs for the appellant.

*J. W. Mahoney,* of Kansas City, argued the cause, and *David W. Carson, John K. Dear,* and *John H. Fields,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is a garnishment action in which plaintiff-appellee recovered a judgment in the district court against the garnishee, State Farm Mutual Automobile Insurance Company (hereafter referred to as insurer or State Farm).

The overall issue is whether the provisions of the Kansas Motor Vehicle Safety Responsibility Act (herein designated as the Act) K. S. A. 8-722, *et seq.,* and in particular 8-750 (*b*), now 1969 Supp. (commonly called "the omnibus clause" provision) apply to an automobile liability insurance policy issued by State Farm to the parents of defendant, James W. Jackson, Jr., when the policy had not been certified as proof of financial responsibility pursuant to K. S. A. 8-748 or 8-749.

Specifically, as applied to the facts of this case, the question is whether a driver exclusionary endorsement attached to a policy, not certified, pursuant to 8-748 or 8-749, *supra,* is invalidated by the application of the Act.

Material facts are stipulated by the parties and the issue is presented in the form of a clear-cut question of law.

Plaintiff recovered a judgment against James W. Jackson, Jr., for personal injuries suffered in an automobile accident. At the time of the accident James W. Jackson, Jr., was driving the insured automobile with the implied permission of his parents, but unaccompanied by either of them. James W. Sr. and Dorothy Maxine Jackson were made defendants in the first instance, but later dismissed from the action which proceeded to trial on September 13, 1966, when judgment was entered for plaintiff against James W. Jackson, Jr., in the amount of $5,000.00.

The judgment was not paid and, on plaintiff's initiative, an order of garnishment was served on State Farm on June 15, 1967.

State Farm filed an answer of garnishee denying any indebtedness to defendant and alleged that it had no property in its possession or under its control belonging to defendant.

State Farm alleged that it had issued a policy of insurance to James W. Jackson, Jr., on August 21, 1962, but cancelled it effective September 2, 1962.

State Farm admitted that it had issued the policy in suit to James W. Jackson, Sr., and that it was in effect on the date of the accident. State Farm denied any liability on this policy by reason of a driver exclusion endorsement which excluded liability while any automobile insured under the policy was operated by James W. Jackson, Jr., except if he were accompanied by the named insured or his spouse. It was further alleged the endorsement was attached pursuant to a driver exclusion agreement, entered into between insurer and insured, on August 30, 1962. State Farm alleged that, by reason of the Jacksons' agreeing to and accepting the driver exclusion agreement, it was induced not to cancel the policy but to continue it in force with the driver exclusion endorsement attached, and the Jacksons by their action and conduct have waived any right to deny the validity of the agreement and endorsement.

For his reply to the answer of garnishee, plaintiff alleged the driver exclusion agreement was void, as against public policy, and denied that he was estopped from claiming coverage under the policy.

The trial court found that the Kansas Financial Responsibility Law requires that all automobile liability insurance policies contain omnibus coverage whether or not the policy has been certified under the Act, and then reasoned that the driver exclusion endorsement was contrary to the Financial Responsibility Law of Kansas and against public policy.

The policy in suit appears to be a standard form, formulated for the purpose of complying with the laws of all states wherein the company does business. Under coverage (A) the insurer is obligated to pay all damages which the insured shall become legally obligated to pay because of bodily injury sustained by other persons, and under coverage (B) for injury to or destruction of property of others, caused by accident arising out of ownership of the automobile.

The definition of "named insured" includes the spouse of insured and with respect to coverages (A) and (B) includes not only the named insured but also his relatives and "any other person while using the automobile, provided the actual use of the automobile is with the permission of the named insured." This definition of insured amounts to what is commonly called an "omnibus clause." The coverage afforded any other person, while using the automobile, conforms essentially with the language required by the omnibus clause provisions of our Act (8-750 [b], *supra.*).

With respect to conformity with Financial Responsibility Laws, the policy provides:

"**Financial Responsibility Laws.** *When certified* as proof of future financial responsibility under any motor vehicle financial responsibility law and while such proof is required during the policy period, this policy shall comply with such law if applicable, to the extent of the coverage and limits required thereby; but not in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." (Emphasis supplied.)

The inclusion of the phrase "when certified" shows that this conformity clause does not mean that the policy must conform with the Act before the Act applied to the insured.

With respect to conformity with general statutes in states where the company does business, the policy provides:

"**Terms of Policy Conformed to Statutes.** Policy terms which are in conflict with the statutes of the State wherein this policy is countersigned are hereby amended to conform to such statutes."

The effect of this provision is to bring the policy into conformance with requirements of the insurance codes and regulations of the commission or department of the various states, as distinguished from the conformity clause with respect to financial responsibility laws.

The purpose of State Farm in securing the driver exclusion agreement was to exclude the liability which otherwise would have attached under the omnibus clause of the policy when James W. Jackson, Jr., was using the automobile with permission of his parents.

The driver exclusion agreement reads:

"Driver Exclusion Agreement
"Policy number 700 904-E20-16
"To induce the State Farm Mutual Automobile Insurance Company to continue to insure the automobile described in the above-numbered automobile

insurance policy, I agree to the immediate addition to said policy of an endorsement containing the following provisions:

"In consideration of the premium at which the policy is written it is agreed that the company shall not be liable and no liability or obligation of any kind shall attach to the Company for losses or damage sustained while any automobile insured hereinunder is driven or operated by James W. Jackson, Jr., except when accompanied by the named insured or the named insured's spouse.

"I further agree to the inclusion of the above endorsement in any transfer, reinstatement or renewal of said policy.

"This agreement is effective

"12:01 A. M. 8   30   62

    "Month Day Year

"Signature of Policyholder

          "/s/ James W. Jackson
          "/s/ Dorothy Maxine Jackson

"Signature of Agent

          "/s/ J. H. Bosley."

Pursuant to the agreement an endorsement was attached to the policy excluding liability when James W. Jackson, Jr., was using any automobile insured under the policy unless he was accompanied by the named insured or his spouse.

This endorsement, plaintiff claims, violates the requirements of subsection (2) of the omnibus clause of 8-750 (*b*), *supra,* which reads in pertinent part:

"(*b*) Such owner's policy of liability insurance: (1) Shall designate by explicit description or by appropriate reference all vehicles with respect to which coverage is thereby to be granted; and (2) shall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicle or vehicles within the United States of America or the Dominion of Canada. . . ."

The plaintiff rests his entire case on the proposition that since 8-750 (*b*) commences with the phrase "Such owner's policy of liability insurance: (1) Shall . . . ." that, therefore, the provisions of the Act apply to all automobile liability policies regardless whether they were filed or certified pursuant to the provisions of the Act, as proof of financial responsibility. Plaintiff says that when a statute is applicable to a policy of insurance, the provisions of the statute are entered into and form a part of the policy, and in case a provision of the policy or an exclusion conflicts with a provision of the policy, the statute controls. We agree with plain-

tiff's statement in this regard, but it begs the question in the instant case which is whether the Act is applicable.

Plaintiff argues that no contract of insurance can conflict with the legislative purpose of the Act and cites *Agee v. Kansas Highway Commission,* 198 Kan. 173, 422 p. 2d 949, where we held:

"The purpose of the Kansas Motor Vehicle Safety Responsibility Act is to provide protection for members of the public in their use of the highways within this state by eliminating the reckless and irresponsible drivers by requiring, among other means, security from drivers and owners of motor vehicles involved in motor accidents." (Syl. ¶ 1.)

The purpose of the Act as stated in *Agee* follows that proclaimed by the legislature (See Laws of 1957, Chapter 68) and we adhere to it, (See, also, *State v. Finley,* 199 Kan. 615, 433 P. 2d 414), but it does not answer the question before us. The *Agee* and *Finley* cases dealt with the security provisions of the Act and the application thereof to situations where an uninsured owner or driver of an automobile involved in an accident, resulting in damages amounting to more than $100, had failed to meet the security requirements of the Act, and thus became subject to suspension provisions of the Act.

Our present Act was adopted in 1957, effective January 1, 1958, and replaced what was previously known as the Proof of Financial Responsibility Law (G. S. 1949, 8-701 to 8-721). The effect of the new Act generally was to add security-type provisions to the previous proof-type law. It conformed generally with parallel provisions of the Uniform Vehicle Code. (Uniform Vehicle Code, Financial Responsibility, Chapter 7, p. 75.)

The legislative history of the Kansas Act is traced in a comprehensive discussion of the subject in Vol. 6 Kansas Law Review, p. 358. The interested reader may also find background material leading to the 1957 enactment in an exhaustive review of the laws of other states in Kansas Legislative Council Publication No. 204, published September, 1956.

The portion of our present Act dealing with the posting of security following an automobile accident now appears as K. S. A. 8-723 to 8-738, incl., and those provisions relating to proof of financial responsibility, with which we are concerned, appear as K. S. A. 8-739 to 8-769, incl.

For purposes of this opinion a detailed analysis of the entire Act is unnecessary. A brief résumé of pertinent sections, as they bear on the case, will suffice.

K. S. A. 8-739 [now 1969 Supp.] sets out the conditions when proof of financial responsibility is required in order to forestall suspension of operating privileges.

The term "proof of financial responsibility" as used in the Act is defined in K. S. A. 8-740 [now 1969 Supp.] and the amount in dollars is fixed for the several conditions of liability which might arise out of the ownership or use of a motor vehicle "on account of accidents occurring *subsequent* to the effective date of said proof." (Emphasis supplied.)

Subsequent sections of the Act deal with the reporting of unpaid judgments, the terms and conditions upon which operating privileges are to be suspended by the Motor Vehicle Department; procedures for the payment of judgments, so as to satisfy the requirements of the Act, and alternative methods of furnishing proof of financial responsibility.

K. S. A. 8-748 specifically provides for the method of furnishing proof by filing a certificate of an authorized insurance carrier that a motor vehicle liability policy is in effect and for the benefit of the person required to furnish proof.

K. S. A. 8-749 provides for a means of furnishing proof by a nonresident.

The section of primary importance to our decision is K. S. A. 8-750 [now 1969 Supp.] which defines "motor vehicle liability policy" and sets out the various requirements in order that a policy shall comply with the purpose of the Act. Subsection (*a*) reads:

"(*a*) A 'motor vehicle liability policy' as said term is used in this act shall mean an 'owner's policy' or an 'operator's policy' of liability insurance, *certified* as provided in section 27[8-748] or section 28[8-749] of this act as proof of financial responsibility, and issued, except as otherwise provided in section 28[8-749], by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured." (Emphasis supplied.)

A policy, if certified, is required to include an "omnibus clause" by the provisions of subsection (*b*), which we have heretofore recited.

Subsection (*f*) is often referred to as a "frozen" or "absolute" liability provision in discussions of financial responsibility laws. It provides that with respect to insurance required by the Act the liability of an insurance carrier shall become absolute, whenever injury or damage covered by the policy occurs. This subsection, in other words, cuts off policy defenses which might otherwise be

available to a carrier after a policy is certified and injury or damage occurs which is covered by the policy.

Provision (4) of subsection (*f*) reads:

"The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this act shall constitute the entire contract between the parties." (8-750, *supra.*)

The plaintiff says that the omnibus coverage section (8-750 [*b*]) should be applied to all liability policies as a matter of public policy and cites cases from Nebraska, California and Arizona in support of his position.

However much we might be inclined to plaintiff's point of view that our Act should control the provisions of all motor vehicle liability insurance policies, whether certified to meet requirements of the Act or not, we are precluded by explicit language of our Act as well as authoritative court decisions.

The term "motor vehicle liability policy" is used in the Act to describe insurance coverage which is sufficient to meet requirements of the Act as proof of an owner's or operator's financial responsibility.

When a policy is certified pursuant to either 8-748 or 8-749, *supra,* it establishes proof of ability to respond in damages for liability on account of accidents occurring *subsequent* to the effective date of said proof by the plain language of 8-740, *supra.*

Kansas law does not require proof of financial responsibility as a prerequisite to granting the privilege of operating an automobile. Thus the Kansas Act is voluntary, rather than a compulsory financial responsibility act. (12 Couch on Insurance 2d, §§ 45:739-740, p. 650.) By the explicit phrases and terminology used it is intended to operate prospectively. Since certification of the policy is not required in advance of the first accident or the occurrence of another event requiring proof, the Act is not applicable so as to make omnibus coverage and other requirements of the Act a part of the policy.

As stated in *Agee v. Kansas Highway Commission,* supra, we recognize and approve the laudable objectives of our Act, but in determining its application we are confined to the specific limitations prescribed by the legislature. No general statement of public policy can override or add to the plain provisions of the Act. (*Western Alliance Insurance Company v. Albarez,* [Tex. Civ. App.], 380 S. W. 2d 710.) As we declared in *Agee* the primary purpose of

the Act was to provide protection for the public and elimination of irresponsible drivers, not the regulation of insurance companies, which we would in effect be undertaking if we were to read the requirements of 8-750, *supra*, into every voluntary motor vehicle liability policy.

Kansas, unlike some States, (See 7 Am. Jur. 2d, Automobile Insurance, § 109 "Omnibus Clause," p. 420.), does not have a general statute requiring the inclusion of an omnibus clause in a motor vehicle liability insurance policy. Thus, if an omnibus clause is to be read into the policy in suit, so as to void the driver exclusionary endorsement, such must be accomplished by imposing on the policy the requirements of the Act.

Although it has been litigated in many other states, the question, heretofore, has not been squarely presented to this court. However, language used in our opinion in the case of *Marley v. Jersey Insurance Co.*, 189 Kan. 658, 369 P. 2d 783, could reasonably be said to forecast this courts's answer to the question. The *Marley* case dealt with the effect of failure by an insurance company to comply with procedural requirements of security provisions of the Act after the first accident involving the insured. In holding the insurer not barred from defending under a policy exclusion, we referred to decisions of other states, as to the application of the Act, and said:

"The various decisions from sister states do not show that contracts can be made over and held for naught under statutes like our Safety Responsibility Act." (page 660.)

The security portions of the Act provide for the posting of security following an automobile accident. The financial responsibility sections relate to the furnishing of proof of financial responsibility for the future and have reference only to future accidents. Insurance policies are restricted to persons mentioned in the Act from whom the department of motor vehicles may require proof of financial responsibility. The requirements of the Act do not enlarge the insurer's obligation where the insured has done nothing requiring his compliance with the financial responsibility law. There is no contention here that James W. Jackson, Sr., had committed any such act.

Because of limited time and space we shall not attempt to discuss individually the many cases from other jurisdictions supporting our holding. The question is the subject of an exhaustive

annotation in 8 A. L. R. 3d, commencing at page 388, and recent cases from more than twenty-five states are collected and examined therein, and in the 1969 supplement to the annotation. Some of the decisions deal specifically with the effect of the Act on a driver exclusionary clause or endorsement, for example *Western Alliance Insurance Company v. Albarez,* supra; many other cases deal with the application of "absolute liability" provisions of respective financial responsibility laws, which involves the same principle. Some of the decisions are federal court interpretations of state statutes in diversity cases.

Keeping in mind the restriction of our Act to a policy that has been "certified" under the definition in 8-750 ( *a* ), *supra,* reference to "subsequent" accidents in the definition of proof of financial responsibility in 8-740, *supra,* and the qualification "when certified" in the financial responsibility laws conformity clause of the policy in suit (the parties may contract otherwise), we believe our holding to be in line with the overwhelming majority of decisions dealing with similar policies and laws. We agree with the rationale of these decisions and find it applicable and controlling under the salient features of the instant case, which we have pointed out.

The rationale of the decisions referred to was stated in *Gabler v. Continental Casualty Company* (Mo. App.) 295 S. W. 2d 194, and adopted and quoted in *United States Casualty Company v. Brock,* (Tex. Civ. App.) 345 S. W. 2d 461:

" 'The rationale of these cases is that the safety responsibility laws do not provide for compulsory motor vehicle liability insurance; that they are prospective in intendment, operate in futuro and are based upon the philosophy that every dog is allowed by the law one free bite; that such laws apply to a second accident and not to a first accident; that there is no requirement that the owner or operator of a motor vehicle carry a policy of liability insurance or that it contain any particular provisions unless and until the safety responsibility law has been invoked by the occurrence of some event resulting in the order of a state official that security be deposited or that proof of financial responsibility be made; that the policy must be a "required" policy before the provisions of the safety responsibility law are to be incorporated therein.' " (p. 464.)

Other authorities supporting the rationale may be found in 7 Am. Jur. 2d, Automobile Insurance, § 7, pp. 299, 300; 7 Appleman on Insurance Law and Practice § 4295, pp. 102, 105 and 106; and 12 Couch on Insurance 2d § 45:739, p. 650.

We are not unmindful of the Arizona, Nebraska and California cases cited which support the contrary view advanced by plaintiff.

Excluding Massachusetts, New York and North Carolina, which now have compulsory laws, of the other states with similar statutes wherein the question has been adjudicated, it appears from our limited research that only Arizona and California follow the contrary rule with respect to voluntary policies containing insuring agreements similar to those of the policy in suit.

The Arizona rule is found in *Jenkins v. Mayflower Insurance Exchange,* 93 Ariz. 287, 380 P. 2d 145. A recent discussion of the California rule may be found in *Bohrn v. State Farm Etc. Ins. Co.,* 226 C. A. 2d 497, 38 Cal. Rptr. 77.

The Arizona and California courts rest their respective decisions generally on the proposition that public policy, as it is declared to be in each state, compels the rejection of respective statutory and policy provisions to the contrary. There is some indication that Nebraska either followed the public policy doctrine with respect to omnibus coverage or treated the Nebraska statutory provision as a general omnibus statute (*Protective Fire & Cas. Co. v. Cornelius,* 176 Nebr. 75, 125 N. W. 2d 179), but now follows the prevailing rule that the first accident is not within the purview of the Motor Vehicle Safety Responsibility Act, following an amendment to the Act in 1965, section 60-561, R. R. S. 1943; *Reserve Ins. Co. v. Aquilera,* 181 Nebr. 605, 150 N. W. 2d 114.

The plain language of the Kansas Act compels our conclusion that the first accident is not within the purview of the Act, nor does the Act have any application to a motor vehicle liability policy which has not been used as proof of financial responsibility.

The judgment is reversed.