No. 46,203

CANAL INSURANCE COMPANY, *Appellant,* v. DANNY SINCLAIR, DAVID SHULTZ and KARL L. HOWARD, a minor, *Appellees.*

(494 P. 2d 1197)

Opinion filed March 4, 1972.

*Don C. Smith,* of Dodge City, argued the cause and was on the brief for the appellant.

*Jack Dalton,* of Mangan and Dalton, of Dodge City, argued the cause and was on the brief for the appellee Sinclair.

*Lee Turner* and *J. Eugene Balloun,* of Turner and Balloun, Chartered, of Great Bend, were on the brief for the appellee Shultz.

*James A. Williams,* of Williams, Larson, Voss and Strobel, of Dodge City, was on the brief for the appellee Howard.

The opinion of the court was delivered by

SCHROEDER, J.: This is a declaratory judgment action brought by the Canal Insurance Company to determine whether it is obligated on an assigned risk automobile liability insurance policy covering Danny Sinclair as the operator of a non-owned vehicle. The policy was issued as proof of financial responsibility under the provisions of the Kansas Motor Vehicle Safety Responsibility Act.

The Canal Insurance Company seeks to determine whether it is required to defend Danny Sinclair in a personal injury action brought against him and David Shultz by Karl L. Howard as a result of an automobile accident, and whether it is obligated to pay any judgment rendered against Danny Sinclair.

The issues involve an interpretation of the insurance contract and a determination from the stipulated facts as to whether the vehicle operated by Danny Sinclair at the time of the accident was an owned or non-owned vehicle.

The case was tried to the lower court on a stipulation of facts.

The Canal Insurance Company (appellant) issued a standard automobile liability policy to Danny Sinclair with the exception of an E-24 endorsement. The policy period was from August 18, 1967, to August 18, 1968. Insofar as material herein the E-24 endorsement provided:

"It is hereby understood and agreed that Paragraph III (Definition of Insured) of Insuring Agreements is hereby eliminated and Paragraph V (Use of Other Automobiles) is amended to apply *only to the NAMED INSURED while operating non-owned vehicles.*" (Emphasis added.)

Danny Sinclair, a resident of Hodgeman County, Kansas, had his driver's license revoked and in order to obtain a new license, he was required to obtain liability insurance. On the 22nd day of August, 1967, he received the policy of insurance as above indicated

from the Canal Insurance Company under the assigned risk plan. To comply with the Motor Vehicle Safety Responsibility Law the Canal Insurance Company deposited a copy of the policy with the Motor Vehicle Department and completed an SR-22 form which accompanied the policy. This form indicated that the policy was issued to Danny Sinclair as an "OPERATOR's POLICY—Applicable to any non-owned vehicle." It further certified that Canal had issued to Danny Sinclair a motor vehicle liability policy as required by the Financial Responsibility Laws of Kansas, which policy was in effect on August 18, 1967.

The policy of insurance in question was transmitted to Danny Sinclair on the 22nd day of August, 1967, along with a letter of explanation stating in part:

"We are enclosing your auto liability policy at this time. The insurance has been filed with the state which is part of the requirement in securing your driver license.

"Should you purchase a car, be certain that you notify us as this policy covers non-owned vehicles only."

At the time the policy was issued to Danny he was driving a 1956 Chevrolet automobile which was titled in the name of his father, Harry L. Sinclair. Thereafter, in order to acquire a 1957 Chevrolet automobile, the 1956 Chevrolet automobile was traded in and Danny Sinclair signed a Kansas Security Agreement (Chattel Mortgage) agreeing to pay an unpaid balance of the purchase price for the 1957 Chevrolet in the amount of $300 in monthly installments. The 1956 Chevrolet automobile so traded had been purchased by Harry L. Sinclair, Danny's father. The 1957 automobile was also titled in the name of Harry L. Sinclair, Danny's father. The certificate of title to the 1957 Chevrolet showed on its face the lienholder or secured party to be "U. C. I. T." The Kansas Security Agreement (Chattel Mortgage) signed by Danny Sinclair was assigned by the dealer to "Universal C. I. T. Credit Corporation" of Dodge City, Kansas. The first installment payment under the security agreement was due January 14, 1968, and was not paid when due.

On or about the 10th day of February, 1968, the 1957 Chevrolet automobile was under the control and management of Danny Sinclair. He had lived with his parents at their home in rural Hodgeman County, Kansas, until approximately February 3, 1968, at which time he obtained employment in Spearville, Kansas, and moved to Spearville taking the 1957 Chevrolet automobile with him for his use and enjoyment there.

After midnight on the 10th day of February, 1968, the time here in question, Danny Sinclair was driving the 1957 Chevrolet automobile when he was involved in a head-on collision with an autobile driven by David Shultz, containing two passengers, Karl Howard and James L. Linenberger. Danny was alone at the time. Linenberger died as a result of the collision and Howard sustained injuries of a serious nature.

Upon being notified of the collision the Canal Insurance Company investigated the matter and thereafter notified Danny and his parents that it was denying coverage. Subsequently, two actions were filed against Danny in the district court of Ford County, Kansas. In an effort to resolve the question of coverage this declaratory judgment action was filed March 21, 1969.

The trial court made findings in accordance with the stipulated facts. It also found that Harry L. Sinclair was the legal title holder of the 1957 Chevrolet automobile; that Danny Sinclair, the insured, was a non-owner; and that the policy of insurance was issued in accordance with the provisions of the Motor Vehicle Safety Responsibility Act of Kansas. It thereupon concluded the obligation of the Canal Insurance Company was prescribed by the statute which was a part of the policy, and the provision of the policy excluding liability, which the insurance company assumed under the statute, could not be given effect. It held the Canal Insurance Company liable to furnish a defense for Danny Sinclair, and that it would be liable for any loss to the insured which may be imposed upon him arising out of the use of the vehicle involved. Appeal has been duly perfected.

Under Item No. 4 of the insurance policy giving the descrpition of the automobile appears the following:

"NON-OWNERSHIP IN ACCORDANCE WITH THE E-24 ENDORSEMENT ATTACHED AS A PART OF THIS POLICY"

The appellant contends the trial court erred as a matter of law in finding the Canal Insurance Company owed Danny Sinclair a defense. The appellant argues the E-24 endorsement to the policy is not vague nor ambiguous, but limits automobile liability coverage for Danny to the following situations:

"A. When he is involved in a collision while driving or operating a vehicle not owned by him.

"B. When he is involved in a collision while driving or operating a vehicle which was not owned by him nor furnished to him for his regular use."

The appellant contends that absent either of the above situations, it is not on the risk.

While the appellant concedes it prepared the contract, and any ambiguity or uncertainty should be resolved in favor of the insured, it contends the policy is not ambiguous because of a specific provision under Insuring Agreements No. V. (c). In material part the policy reads:

"V. Use of Other Automobiles: If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"(c) This insuring agreement does not apply:

"(1) to any automobile owned by or furnished for regular use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse;"

The appellant contends on the stipulated facts the 1957 automobile was either owned by or furnished for the regular use of Danny and therefore coverage was specifically excluded by the provisions of the policy.

It is to be noted the E-24 endorsement to the policy says nothing concerning an automobile furnished for the insured's regular use. The endorsement amends Paragraph V (Use of Other Automobiles) of the policy to apply *only to Danny Sinclair while operating non-owned vehicles.*

Where a provision of an insurance policy is susceptible of different constructions, it is to be construed most favorably to the insured, and if the insurer intended to restrict its coverage, it should use language clearly stating its purpose. (*Miller v. Farmers Mutual Automobile Ins. Co.,* 179 Kan. 50, 292 P. 2d 711; and *Gowing v. Great Plains Mutual Ins. Co.,* 207 Kan. 78, 483 P. 2d 1072.)

Assuming the policy to be ambiguous regarding the E-24 endorsement, the effect of the E-24 endorsement, construing the policy in accordance with the above rule, is to eliminate Paragraph V from the policy completely. Furthermore, the effect of the E-24 endorsement eliminates Paragraph V from the policy when the provisions of the Kansas Motor Vehicle Safety Responsibility Act are read into the policy. (See K. S. A. 8-750 (c), *infra.*)

The fact, therefore, that the 1957 Chevrolet automobile was furnished to Danny for his regular use is immaterial in resolving the

issue of coverage under the policy of insurance issued by the appellant.

Was the 1957 Chevrolet owned by Danny Sinclair at the time of the accident in question, on the stipulated facts, and thereby excluded from coverage under the E-24 endorsement?

The policy in question was certified as proof of financial responsibility as required by K. S. A. 8-747 (*b*) (1) and K. S. A. 8-748, the applicable statutes at the time here in question. Under these circumstances Paragraph No. 5 of the Conditions of the policy applies. It provides:

"5. Financial Responsibility Laws-Coverages A and B: When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

Danny Sinclair purchased a non-ownership policy from the appellant, and it certified to the Kansas authorities on an SR-22 form, that it had issued a non-ownership operator's policy to Danny Sinclair. The appellant's policy of insurance was certified by it as proof of Danny Sinclair's financial responsibility in compliance with K. S. A. 8-748, in order that Danny Sinclair might obtain a driver's license. Therefore, the Motor Vehicle Safety Responsibility Act became a part of the policy, including the act's "Definition of Ownership."

The rule is well established in Kansas that where a policy of insurance is issued to an insured in compliance with the requirements of a statute, the pertinent provisions of the statute must be read into the policy, and no provisions of the policy in contravention of the statute can be given effect. (*Dunn v. Jones,* 143 Kan. 218, 53 P. 2d 918, opinion denying rehearing 143 Kan. 771, 57 P. 2d 16; *Millers Nat'l Ins. Co. v. Bunds,* 158 Kan. 662, 149 P. 2d 350; *Cuddy v. Tyrrell,* 171 Kan. 232, 237, 232 P. 2d 607; and *Sterling v. Hartenstein,* 185 Kan. 50, 341 P. 2d 90, and cases accumulated at page 54.)

Condition No. 5 of the policy recognizes that the Motor Vehicle Safety Responsibility Act is a part of the policy.

The Kansas Motor Vehicle Responsibility Act authorizes two types of insurance coverage as being acceptable under the act. The pertinent provisions of K. S. A. 8-750, applicable herein, provide:

"( *a* ) A 'motor-vehicle liability policy' as said term is used in this act shall mean an 'owner's policy' or an 'operator's policy' of liability insurance, certified as provided in section 27 [8-748] or section 28 [8-749] of this act as proof of financial responsibility, and issued, except as otherwise provided in section 28 [8-749], by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

.   .   .   .   .   .   .   .   .   .   .   .   .

"( *c* ) *Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him,* within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.

"( *d* ) Such motor-vehicle liability policy shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period, and the limits of liability, *and shall contain an agreement or be endorsed that insurance is provided thereunder in accordance with the coverage defined in this act as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this act.*

.   .   .   .   .   .   .   .   .   .   .   .

"( *f* ) Every motor-vehicle liability policy shall be subject to the following provisions which need not be contained therein: ( 1 ) The liability of the insurance carrier with respect to the insurance required by this act shall become *absolute* whenever injury or damage covered by said motor-vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; *no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy.* ( 2 ) The satisfaction by the insured of a judgment for such injury or damage shall not be a condition precedent to the right or duty of the insurance carrier to make payment on account of such injury or damage. ( 3 ) The insurance carrier shall have the right to settle any claim covered by the policy, and if such settlement is made in good faith, the amount thereof shall be deductible from the limits of liability specified in subdivision 2 of subsection ( *b* ) of this section. ( 4 ) *The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this act shall constitute the entire contract between the parties.*" (Emphasis added.)

The policy here issued was an operator's policy which narrowed the coverage to the insured, Danny Sinclair, only. It does not cover anyone else. Under 8-750 ( *c* ) above, Danny was insured against loss from liability imposed upon him by law for damages arising out of the *use by him of any motor vehicle not owned by him.* Provisions of the policy at variance therewith are ineffectual.

For purposes of the Kansas Motor Vehicle Safety Responsibility Act the term "owner" has been defined in K. S. A. 8-722 as follows:

" 'Owner.' *A person who holds the legal title of a vehicle,* or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purposes of this act." (Emphasis added.)

The act does not define a "non-owner," but this would seem unnecessary in view of the fact that the term "owner" has been defined. The policy of insurance was certified as an "operator's policy" which is defined in the act. (8-750 [c], *supra.*)

It was stipulated the legal title to the 1957 Chevrolet automobile was in the name Harry L. Sinclair, the father of Danny Sinclair. The certificate of title which was made a part of the stipulation so states. In the certificate of title to the automobile in question the Motor Vehicle Department of Kansas certified, as authorized by K. S. A. 8-135, that Harry L. Sinclair "is the *legal owner of the vehicle described,* subject to interest as shown." (Emphasis added.) On the facts in this case Danny Sinclair *was a "non-owner" of the vehicle* he was operating, and the other alternatives enumerated under the definition have no application.

If it be argued that Danny Sinclair was a mortgagor of the vehicle entitled to possession in accordance with language in the security agreement (see the definition of "owner" in 8-722, *supra,* above quoted), it is nullified by *the certificate of title showing Harry L. Sinclair to be the owner and the mortgagor.* The certificate of title *disclosed the lien of Universal C. I. T. Credit Corporation* on the motor vehicle.

The security agreement erroneously recites (in small print on the form) that the certificate of title was delivered to the customer (Danny Sinclair) purchasing the car from the secured party. Harry L. Sinclair on the record here presented had legal title. He had a substantial investment in the 1957 Chevrolet automobile, which he subjected to a lien in the amount of the unpaid purchase price.

As to the ownership of motor vehicles Kansas is a "title" state. K. S. A. 8-135 (*c*) (6) provides:

"(6) It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered hereunder, unless, at the time of delivery thereof there shall pass between the parties such certificate of title with an

assignment thereof, as herein provided, and the sale of any vehicle registered under the laws of this state, without the assignment of such certificate of title, shall be fraudulent and void."

Subsequent amendments to the statute, here applicable, have not changed the foregoing provisions. (Amendment by L. 1971, ch. 18, § 6, has not materially altered the substance of the section.) The statute was construed in *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P. 2d 931. The court there said, that as a matter of public policy 8-135 (*c*) (6), *supra*, should be strictly enforced for the protection of third persons who suffer at the hand of a buyer who has obtained possession and control of an automobile from the seller, but has not received an assigned certificate of title. In considering the term "owner" the court made reference to cases from other jurisdictions, and then observed:

". . . Representative of these cases is *Sabella v. American Indemnity Co.*, supra [Mo. 372 S. W. 2d 36], where it was held that until a certificate of title, properly assigned, is delivered by the seller to the buyer, the buyer does not become the owner of the automobile; . . ." (pp. 382, 383.)

The appellant relies on K. S. A. 8-126 (*n*), and contends the legal title holder of the vehicle cannot be the only criterion of determining ownership as contemplated by the insurance policy. The cases relied upon involve questions of ownership as between partners (*Crow v. Hershberger*, 170 Kan. 492, 226 P. 2d 846); donor and donee (*In re Estate of Baumstimler*, 159 Kan. 316, 153 P. 2d 927); and the determination of an insurable interest in a party paying for a vehicle, but having no certificate of title or bill of sale issued for the vehicle (*Weaver v. Hartford Fire Ins. Co.*, 168 Kan. 80, 211 P. 2d 113). While the statute cited by the appellant is identical to 8-722, *supra*, which is in the Motor Vehicle Safety Responsibility Act, it is not applicable here nor are the cases cited by the appellant. They did not arise under the Motor Vehicle Safety Responsibility Act, but involved controversies over contractual interests in motor vehicles. The parties involved were related by contract. This court has said that 8-135, *supra*, was passed to protect the rights of such persons as mortgagees and innocent purchasers and for the benefit of the general public. (*Crow v. Hershberger*, supra.)

The purpose of the Kansas Motor Vehicle Safety Responsibility Act has been succinctly stated in our cases. It is to provide protection for the members of the public in their use of the highways within the state, and to require security from drivers as well as

owners of motor vehicles coming within the purview of the act. (*Agee v. Kansas Highway Commission*, 198 Kan. 173, 422 P. 2d 949; and *Miller v. State Farm Mutual Automobile Ins. Co.*, 204 Kan. 694, 698, 466 P. 2d 336.)

Once a motor vehicle liability policy is issued pursuant to the Kansas Motor Vehicle Safety Responsibility Act, liability of an insurance carrier shall become *absolute* whenever injury or damage covered by the policy occurs. (K. S. A. 8-750 [*f*].) In *Miller v. State Farm Mutual Automobile Ins. Co.*, 204 Kan. 694, 466 P. 2d 336, the court said:

"Subsection (*f*) is often referred to as a 'frozen' or 'absolute' liability provision in discussions of financial responsibility laws. It provides that with respect to insurance required by the Act the liability of an insurance carrier shall become absolute, whenever injury or damage covered by the policy occurs. This subsection, in other words, cuts off policy defenses which might otherwise be available to a carrier after a policy is certified and injury or damage occurs which is covered by the policy." (pp. 700, 701.)

At best the action of Danny Sinclair in signing the security agreement for the 1957 Chevrolet automobile was an attempt to violate the terms of the policy here in question, but under 8-750 (*f*) (1), *supra*, this was ineffectual to defeat or void the policy of insurance. If the security agreement be viewed as evidence of a sale between the dealer and Danny Sinclair, the sale would be fraudulent and void. At the time the auto was delivered no certificate of title with an assignment thereof passed between the dealer and Danny Sinclair.

The appellant's construction of the automobile liability insurance policy in question conflicts with the clear and mandatory provisions of the Kansas Motor Vehicle Safety Responsibility Act.

In conclusion we find the trial court did not err in construing the policy and in applying it to the stipulated facts of this case.

The judgment of the lower court is affirmed.