No. 46,674

KENNETH D. POPP, *Appellant,* v. MOTOR VEHICLE DEPARTMENT, *Appellee.*

(508 P. 2d 991)

Opinion filed April 7, 1973.

*Harlan L. Long,* of Shawnee Mission, argued the cause, and was on the brief for the appellant.

*Clinton C. Marker,* of Topeka, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: Kenneth D. Popp (petitioner-appellant) was arrested on February 5, 1970, in Overland Park, Kansas, and was charged with driving a motor vehicle while under the influence of intoxicating liquor. After being taken into custody, the appellant was requested by the arresting officer to submit to a "breathalizer" test. The appellant refused to submit to the "breathalizer" test and on February 11, 1970, the appellant's privilege to operate a motor vehicle on the streets and highways of Kansas was suspended by an

order of the motor vehicle department. (K. S. A. 1972 Supp. 8-1001.) The order stated the length of suspension would be ninety (90) days from the date the motor vehicle department received the license. The order also indicated the appellant could request a hearing to determine whether he had reasonable grounds for refusing to take the test, and that after due consideration of the record of motor vehicle offenses committed by the motorist, the department could extend the suspension of the license for a period not to exceed one (1) year.

The appellant requested such hearing and on March 4, 1970, twenty-two days after the order of suspension was issued, an examiner of the motor vehicle department heard the matter and upheld the suspension, finding the arresting officer's request was reasonable. On March 9, 1970, the appellant filed his petition seeking relief in the district court of Johnson County, Kansas. The court thereupon stayed the suspension pending final judgment and ordered the motor vehicle department to return the appellant's license to him. (K. S. A. 8-259.) His license was returned to him on March 12, 1970, pending final judgment in the matter.

The trial court, after hearing the matter, sustained the motor vehicle department's motion for a directed verdict and found the petitioner had refused and failed to submit to a chemical test upon the reasonable request of the arresting officer. The petitioner has duly perfected an appeal.

The facts are not in dispute.

The appellant contends his right to due process of law as established by the Fifth and Fourteenth Amendments to the United States Constitution was violated by the appellee when it supended his license *prior* to affording him an administrative hearing in regard to the suspension. As was noted earlier, twenty-two days elapsed between the time the motor vehicle department suspended the appellant's license and the date he was afforded an administrative hearing. The appellant also contends no emergency existed which would warrant the extraordinary action suspending his license prior to an administrative hearing. A review of the Kansas law reveals no prior case directly in point, however, *Lee v. State*, 187 Kan. 566, 358 P. 2d 765, on similar facts considered the due process question.

Here we are concerned only with the legality of the motor vehicle department's suspension of the appellant's license *prior* to affording him an administrative hearing.

The appellant relies on *Bell v. Burson,* 402 U. S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586, which held that due process of law required the State of Georgia to provide a hearing on the question of liability prior to suspending a motor vehicle operator's license under Georgia's Motor Vehicle Safety Responsibility Act. The court in *Bell v. Burson,* supra, discussed the nature of due process and said:

". . . In cases where there is no reasonable possibility of a judgment being rendered against a licensee, Georgia's interest in protecting a claimant from the possibility of an unrecoverable judgment is not, within the context of the State's fault-oriented scheme, a justification for denying the process due its citizens. Nor is additional expense occasioned by the expanded hearing sufficient to withstand the constitutional requirement." (p. 540.)

As to Georgia's argument that the administrative hearing need not be made prior to the suspension of the license, the court stated:

". . . [I]t is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective. *Ibid. Opp Cotton Mills v. Administrator,* 312 U. S., at 152-156; *Sniadach v. Family Finance Corp.,* [395 U. S. 337 (1969)]; *Goldberg v. Kelly,* [397 U. S. 254 (1970)]; *Wisconsin v. Constantineau,* 400 U. S. 433 (1971)." (p. 542.)

In *Burson,* the petitioner, an uninsured motorist, was involved in an accident when a young girl rode her bicycle into the side of his automobile. The petitioner failed to post security for the damages alleged to have been suffered by the girl and at an administrative hearing the petitioner's offer to prove that he was not liable for the accident was rejected and he was allowed thirty days in which to post security or have his license and registration suspended. The administrative decision was upheld by the Georgia Court of Appeals and the Georgia Supreme Court denied review. After granting certiorari, the United States Supreme Court reversed and remanded the case.

We do not think *Burson* has application here. A suspension under the Safety Responsibility Act is different than a suspension under K. S. A. 8-1001. Logically, to suspend a person's license who has been involved in a motor vehicle accident for failure to post security to cover the amount of damages claimed by another party involved in the accident, prior to affording the opportunity for an administrative hearing to determine reasonable possibility of a judgment being rendered against him, is rather tenuous.

It is an entirely different matter to say that a person has been

deprived of his constitutional rights when he has his driver's license suspended for refusing to submit to a chemical test, when by law he has impliedly consented to do so, and when the arresting officer has reasonable grounds to believe that person is intoxicated. The United States Supreme Court in *Bell v. Burson* was not addressing its attention to this situation.

It is elementary that the right to operate a motor vehicle upon a public street or highway is not a natural or unrestrained right but a *privilege* which is subject to reasonable regulations under the police power of the state in the interest of the public's safety and welfare. (*Lee v. State*, 187 Kan. 566, 358 P. 2d 765.) The driver's license is not a contract or a property right in the constitutional sense, and therefore its revocation does not constitute the taking of property. The privilege is granted to those who are qualified, who comply with reasonable police power requirements in the interest of public safety and welfare, and is withheld from those who do not.

The Supreme Court of Oklahoma has recently upheld its implied consent statute similar to K. S. A. 1972 Supp. 8-1001, in *Robertson v. State ex rel. Lester*, Okla. 501 P. 2d 1099, on facts similar to the case at bar.

The issue here presented requires the court to weigh the interest of society for safety on its highways as against an individual's rights and privileges under the constitution. The threatened safety of the public by the drunken driver on its highways requires that the interest of the public prevail, and the constitutionality of 8-1001, *supra*, must be upheld as a valid enactment by the state in the exercise of its police power.

When a person is arrested, as here, for operating a motor vehicle under the influence of intoxicating liquor, and the arresting officer has reasonable grounds to believe that prior to his arrest the person was driving under the influence of intoxicating liquor, the refusal of such person to submit to the chemical test, as required by the statute, warrants the suspension of his driving privileges *prior* to an administrative hearing to determine the reasonableness of his refusal. This is a valid exercise of the police power of the state designed as a method for controlling highway safety.

K. S. A. 1972 Supp. 8-1001 provides as follows:

"Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given his consent to submit to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the

alcoholic content of his blood whenever he shall be arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of intoxicating liquor in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to his arrest the person was driving under the influence of intoxicating liquor. The test shall be administered at the direction of the arresting officer. If the person so arrested refuses a request to submit to the test, it shall not be given and the arresting officer shall make to the vehicle department of the state highway commission a sworn report of the refusal, stating that prior to the arrest he had reasonable grounds to believe that the person was driving under the influence of intoxicating liquor. Upon receipt of the report, the vehicle department of the state highway commission shall suspend for a period not exceeding ninety (90) days the person's license or permit to drive or non-resident operating privilege and, after granting the person an opportunity to be heard on the issue of the reasonableness of his failure to submit to the test, the vehicle department of the state highway commission may, after due consideration of the record of motor vehicle offenses of said person, extend said suspension of the person's license or permit to drive or nonresident operating privilege for a total period of not to exceed one (1) year."

The chemical tests provided for in 8-1001 eliminate mistakes which may arise from objective observation alone and they disclose the truth when a motorist alleges he has drunk only a small amount and could not be intoxicated. The tests allow protection to the person who has not been drinking to excess but has been involved in an accident and has the aroma of alcohol on his breath. The chemical tests save the motorist from a drunken driving charge when his conduct creates the appearance of intoxication but who is actually suffering from other causes over which he had no control. (*Marbut v. Motor Vehicle Department*, 194 Kan. 620, 400 P. 2d 982.)

In addition, the United States Supreme Court has stated that a compulsory blood test involves no testimonial compulsion and a defendant's constitutional rights are not violated by the compulsory blood test and the admission of the results thereof into evidence. (*Schmerber v. California*, 384 U. S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826.) In commenting on 8-1001 in *Lee v. State*, supra, the court said:

"The statute does not compel one in plaintiff's position to submit to a blood test, and does not require one to 'incriminate himself' within the meaning of the constitutional provisions. And neither is it violative of due process. . . It gives the driver the right of choice of the statutory suspension of his license, and further gives him the right to a hearing on the question of the reasonableness of his failure to submit to the test. Furthermore, under 8-259, above, he has the right of appeal to the district court of the county of his residence. . . ." (pp. 571, 572.)

The comments made in *Lee v. State,* supra, are perhaps more valid now than at the time they were first made. We take judicial notice of the continuing slaughter on the highways of this state and those of the nation as a whole. Statistics compiled by the safety department of the highway commission of the State of Kansas reveal that 2,725 accidents in Kansas were attributed in whole or in part to drinking drivers in the year 1971. The statistics also show that over 250 persons were killed and 2,000 persons injured because of drinking drivers in Kansas during 1971.

The appellant, by utilizing his privilege to drive a motor vehicle upon the streets and highways of this state, *impliedly consented* to submit to a chemical test of his breath, blood, urine or saliva for the purpose of determining the alcoholic content of his blood. The statute gave him a choice to submit to the test or not to submit when he was requested to do so by the arresting officer. Having refused to submit to the test, it was his choice that the statutory suspension of his driving privileges be invoked, subject to his right to a hearing thereafter to determine the question of the reasonableness of his refusal to submit to the test. The chronology of events shows the appellant was given his administrative hearing with reasonable dispatch.

The judgment of the lower court is affirmed.