No. 74,027

STATE OF KANSAS, *Appellant*, v. JOHN D. MERTZ, *Appellee.*
(907 P.2d 847)

Opinion filed December 8, 1995.

*Glenn R. Braun*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Michael S. Holland*, of Russell, argued the cause and was on the brief for appellee.

*James G. Keller*, of Kansas Department of Revenue, was on the brief for *amicus curiae* Kansas Department of Revenue.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by the State from the trial court's dismissal of criminal charges (driving while under the influence of alcohol in violation of K.S.A. 1994 Supp. 8-1567[a][2]) on the ground of double jeopardy because the defendant, John D. Mertz, had already had his driver's license suspended and restricted for failing a breath test.

Mertz was arrested on September 1, 1994, in Ellis County, on suspicion of driving while under the influence of alcohol. The defendant submitted to a breath test which showed the alcohol concentration in his blood was .08 or more. As a result, the State filed criminal charges against the defendant pursuant to K.S.A. 1994 Supp. 8-1567(a)(2) for driving while under the influence of alcohol.

While criminal charges were pending, the Department of Revenue, Division of Vehicles, held an administrative hearing on January 4, 1995. Based on the defendant's breath test of September 1, 1994, the Department of Revenue examiner suspended the defendant's driver's license for a period of 30 days and restricted it for an additional 330 days pursuant to K.S.A. 1994 Supp. 8-1014.

Thereafter, the defendant filed a motion to dismiss the criminal charges. The defendant contended he had already been subject to punishment by the administrative suspension of his driver's license. Thus, he argues, the criminal charges exposed him to multiple punishments in violation of the double jeopardy clauses in the Fifth Amendment of the United States Constitution and §10 of the Kansas Constitution Bill of Rights. The trial court granted the defendant's motion and dismissed the criminal charges.

The district court found that allowing the State to proceed with criminal charges against the defendant would constitute multiple punishment and thereby violate the double jeopardy protections. Relying on *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989), the district court pointed out that an administrative civil sanction could constitute "punishment" for double jeopardy purposes. Under *Halper*, a civil sanction qualifies as "punishment" for double jeopardy purposes if any purpose behind the sanction is punitive or deterrent. According to the trial court, the only civil sanction which does not qualify as "punishment" is one which has an exclusively remedial purpose.

The trial court found the suspension of a driver's license has a remedial purpose in that it keeps dangerous drunk drivers off the road. However, it also found the suspension has punitive and deterrent purposes. For instance, when a police officer asks a driver to take a breath test, the officer must warn the driver of the consequences of failing the test. Moreover, the driver may suffer a significant personal impact, including the loss of his or her job, if his or her license is suspended. According to the trial court, the warnings and severe consequences associated with a license suspension indicate the suspension has retributive and deterrent effects. Thus, the trial court found the Department of Revenue's ruling, license suspension for 30 days and license restriction for 330 days, constituted punishment against the defendant for driving while under the influence of alcohol. Allowing the State to punish the defendant again through criminal prosecution for the same offense would result in multiple punishment and expose the defendant to double jeopardy. To avoid violation of the double jeopardy clauses, the district court dismissed the criminal proceedings against the defendant.

The State appeals to this court from that decision. Jurisdiction is based upon K.S.A. 1994 Supp. 22-3602(b)(1). We allowed the Kansas Department of Revenue to file an *amicus curiae* brief.

The trial court concluded that the administrative suspension of a driver's license constitutes "punishment" for double jeopardy purposes. This is a determination of law. Thus, this court may exercise an unlimited, de novo standard of review. See *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, 844, 863 P.2d 364 (1993); *State v. Nelson*, 249 Kan. 689, 692, 822 P.2d 53 (1991). The parties concur that this is the appropriate standard of review.

K.S.A. 8-1001 *et seq.*, also called the Implied Consent Law, is the statute which authorizes the Department of Revenue to suspend a person's driver's license. A brief review of this law will be helpful in assessing the issues presented to this court. K.S.A. 1994 Supp. 8-1001(a) states that any person who drives a car in Kansas is deemed to consent to a chemical test in order to determine the driver's blood alcohol concentration. Before a police officer conducts a test, the officer must provide the driver with certain warn-

ings. K.S.A. 1994 Supp. 8-1001(f)(1). Such warnings include: If a person refuses to submit to a chemical test, the person's driving privileges will be suspended for 1 year. K.S.A. 1994 Supp. 8-1001(f)(1)(D). If the person consents to a test and the person's blood alcohol concentration registers .08 or more, then the person's driving privileges will be suspended for 30 days. K.S.A. 1994 Supp. 8-1001(f)(1)(E). The results of the test or the refusal to submit to a test may be used against the person at a criminal trial for driving while under the influence of alcohol. K.S.A. 1994 Supp. 8-1001(f)(1)(G), (H). Under K.S.A. 1994 Supp. 8-1014(b) and (c), if a person registers .08 or more on a chemical test, the division of motor vehicles shall "suspend the person's driving privileges for 30 days," then restrict the person's driving privileges for an additional 330 days on the first occurrence.

## I. DOUBLE JEOPARDY

The Fifth Amendment Double Jeopardy Clause of the United States Constitution states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The double jeopardy guaranty is enforceable against the states through the Fourteenth Amendment. *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Kansas also enforces an analogous double jeopardy clause in Section 10 of the Kansas Constitution Bill of Rights. It states: "No person shall . . . be twice put in jeopardy for the same offense." The double jeopardy protection guaranteed in the Kansas Constitution Bill of Rights is equivalent to the protection guaranteed in the United States Constitution. See *State v. Cady*, 254 Kan. 393, 396-97, 867 P.2d 270 (1994). The double jeopardy clause provides three different types of protection for a person charged with a crime. Double jeopardy protection shields an accused from: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." 254 Kan. at 396 (citing *Brown v. Ohio*, 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221 [1977]).

Here, the first type of protection does not apply because the defendant was never acquitted of an offense. The State begins by

addressing the second type of double jeopardy protection, protection against a "second prosecution for the same offense after conviction." According to the State, the Department of Revenue license suspension proceeding was not a prosection or conviction; thus, the DUI criminal charge in question cannot subject the defendant to a "second prosecution." Rather, the suspension proceeding was simply a civil, administrative sanction. As a civil sanction, the license suspension does not implicate double jeopardy because, the State reasons, a criminal and civil sanction may be imposed for the same act without violating double jeopardy. See *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 79 L. Ed. 2d 361, 104 S. Ct. 1099 (1984).

In support of this argument, the State cites to several cases which have found the suspension of a driver's license to be a civil proceeding, not a criminal proceeding. *State v. Maze*, 16 Kan. App. 2d 527, 825 P.2d 1169 (1992); *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988). Moreover, the State points out the differences between the Department of Revenue's revocation of a driver's license and a criminal DUI prosecution. Many of the formalities required in a criminal DUI prosecution are not required in an administrative hearing to revoke a driver's license. For instance, an administrative hearing differs from a criminal prosecution in that at an administrative hearing, the driver is not required to post bond for his appearance, the driver is not under a legal duty to appear, and the driver cannot be fined or imprisoned. Furthermore, the State has a different burden of proof in an administrative hearing than it does in a criminal prosecution, and the Department of Revenue does not enter a judgment of acquittal or conviction in an administrative hearing as a factfinder does in a criminal prosecution. See *Ballard v. State, Motor Vehicle Division*, 595 P.2d 1302, 1305 (Utah 1979); *State v. Strong*, 158 Vt. 56, 63, 605 A.2d 510 (1992).

Because the Department of Revenue's proceeding to revoke a driver's license is different from a criminal DUI prosection, the State contends the administrative proceeding does not qualify as a "criminal prosecution." The license suspension is only a civil proceeding. Thus, even though the defendant's license has been ad-

ministratively suspended, the defendant has not been "prosecuted" for the "offense" of driving while under the influence of alcohol. Therefore, a criminal DUI prosecution is not a *second* prosecution for the same offense after conviction." Consequently, the second type of double jeopardy protection is not implicated by the administrative license suspension.

The defendant does not contest that the suspension is a civil sanction rather than a criminal prosecution. The defendant does not argue that the second type of double jeopardy protection has been violated. Rather, the defendant contends that the third type of the double jeopardy protection is violated—protection from multiple punishments for the same offense. The trial court relied on the third type of double jeopardy protection in dismissing the charges against the defendant.

The third of type of double jeopardy protection guarantees that a defendant will not be subject to "multiple punishments" for the same offense. *State v. Cady*, 254 Kan. at 396. The defendant contends that the administrative license suspension is "punishment" for driving while under the influence. Thus, if the State is allowed to pursue a criminal DUI prosecution against the defendant, this would constitute "multiple punishment for the same offense." Under this type of double jeopardy protection, it is irrelevant whether the license suspension proceeding is labeled a "civil proceeding" or a "criminal prosecution." *United States v. Halper*, 490 U.S. at 447-50. Thus, even though the suspension proceeding may be a mere civil sanction and not a criminal prosecution, it can still qualify as "multiple punishment" and violate the third type of double jeopardy protection.

As a preliminary matter, the defendant points out that the civil suspension proceeding and the criminal DUI prosecution are separate, parallel proceedings which attempt to sanction the same offense. For instance, the issue in both proceedings is whether the defendant had a blood alcohol concentration of .08 or more. K.S.A. 1994 Supp. 8-1567(a)(2); K.S.A. 1994 Supp. 8-1002(a)(2)(D); K.S.A. 1994 Supp. 8-1014(b). The State does not contest this issue. A criminal DUI prosecution and conviction obviously constitute "punishment" for committing the crime of driving while under the

influence of alcohol. Thus, the determinative issue of this case is whether the civil license suspension constitutes "punishment" against the defendant for driving while under the influence of alcohol. If so, a criminal DUI prosecution which occurs after an administrative license suspension would equal "multiple punishment" for the same offense, thereby violating the third type of double jeopardy protection.

The crux of the defendant's argument is based on the definition of punishment in *United States v. Halper*, 490 U.S. at 448-49. In *Halper*, the defendant was convicted of collecting 65 false Medicare reimbursement claims. For this offense, the defendant was fined $5,000 and sentenced to prison. Later, the Government brought a civil action against the defendant, seeking $130,000 in civil penalties for the same offense. The Government's actual damages were $585. The court held that the civil monetary sanction of $130,000 was disproportionate to the harm actually caused and that it qualified as "punishment." Since the defendant had already been criminally punished, the civil sanction constituted multiple punishment and violated double jeopardy.

*Halper* states that in determining whether a sanction qualifies as "punishment," it is irrelevant whether a sanction is defined as a criminal or civil sanction. A civil sanction may constitute punishment if the sanction "serves the goals of punishment," such as retribution and deterrence. 490 U.S. at 448. As *Halper* states:

"[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty [which the sanction] may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

"These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. [Citation omitted.] . . . From these premises, it follows that *a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment,* as we have come to understand the term [expansive definition of punishment]. [Citation omitted.] We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may *not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be*

*characterized as remedial, but only as a deterrent or retribution* [restrictive definition of punishment]." 490 U.S. at 448-49.

According to *Halper*, the court must use common sense to determine if a civil proceeding has a retributive, deterrent, or remedial purpose. The court must determine the "purposes actually served by the sanction in question" from an objective viewpoint and not from the subjective viewpoint of the defendant because "for the defendant even remedial sanctions carry the sting of punishment." 490 U.S. at 447 n.7. Finally, *Halper* points out that it is a rule for the rare case. 490 U.S. at 449.

*Johnson v. State*, 95 Md. App. 561, 622 A.2d 199 (1993), found *Halper* does not apply to the analysis of whether a driver's license suspension implicates double jeopardy. Rather, *Johnson* holds that *Halper* applies to circumstances in which the government seeks a monetary penalty to compensate the government for its loss. In *Johnson*, the court found the defendant was not subjected to a monetary fine but was merely deprived of his driving privilege; thus, the suspension does not constitute "punishment." The *Johnson* court contended *Halper* did not affect its determination that license suspension did not constitute punishment or implicate double jeopardy. 95 Md. App. at 573-74.

Further, *State v. Maze*, 16 Kan. App. 2d at 535, addressed whether a license suspension and criminal prosecution of the same offense constitutes double jeopardy. In its analysis, the court stated: "The facts in *Halper* are materially different from this sanction, and its holding is not authority for Maze's contention."

In *Loui v. Board of Medical Examiners*, 78 Hawaii 21, 889 P.2d 705 (1995), the court analyzed the temporary suspension of a doctor's license to practice medicine. The *Loui* court found *Halper* did not factually apply to the case at hand. Rather, the court asserted that *Halper* only applied to instances in which the government attempts to "extract monetary damages entirely unrelated to the goal of making the government whole in a civil proceeding from an individual who has already been 'punished' in a criminal proceeding." 78 Hawaii at 27. The *Loui* court pointed out that it was not addressing the constitutionality of a monetary penalty used to

compensate the government for its losses. Thus, *Halper* did not affect the court's analysis that the medical license suspension did not violate double jeopardy. However, the *Loui* court did apply the broad legal principals of *Halper* that a civil penalty may constitute punishment if it carries forth the purpose of punishment. The *Loui* court analyzed whether the suspension sanction had a remedial, deterrent, or retributive purpose. It pointed out that a sanction may carry a remedial purpose even if it does not proportionately compensate the Government for a monetary loss. For instance, a sanction which protects the public from harm or a sanction which revokes a privilege that is being abused carries a remedial purpose. 78 Hawaii at 27 n.14.

*United States v. Hudson*, 14 F.3d 536 (10th Cir. 1994), supports the defendant's position that *Halper* does apply to the facts at issue and that the definition of punishment is expansive. In *Hudson*, the defendants mismanaged several banks. As a result, the comptroller of currency prohibited the defendants from further participation in banking and charged the defendants a monetary penalty. Later, the Government criminally indicted the defendants for this same banking mismanagement. The defendants filed a motion to dismiss the indictments because a criminal conviction would constitute multiple punishment for this same offense and violate double jeopardy. In determining whether the banking prohibition or monetary penalty qualified as punishment, the court looked to its definition of "punishment" in *Halper*. The court found that unless a sanction is *solely* remedial, then it qualifies as punishment. However, the court tried to soften this rule by clarifying that a sanction does not qualify as punishment simply because it *may* be defined as having a retributive or deterrent purpose. A sanction is only punishment if it *must* be defined as having a partially retributive or deterrent purpose. 14 F.3d at 540.

The defendant also cites to *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994), which held that a tax imposed on the possession of illegal drugs was punishment and thus implicated double jeopardy. The defendant's reliance on *Kurth Ranch* is misplaced for two reasons. First, contrary to the defendant's position, *Kurth Ranch* seems to inter-

pret *Halper* as promulgating a restrictive, rather than expansive, definition of punishment. In analyzing *Halper*, the court quoted the clause of *Halper* that states a civil sanction is punishment if the sanction " 'may not fairly be characterized as remedial, but only as a deterrent or retribution.' " 128 L. Ed. 2d at 777. Thus, *Kurth Ranch* follows the interpretation that if a sanction has a remedial purpose at all, then it is not punishment. Consistent with this interpretation, *Kurth Ranch* states later in the opinion that "neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment." 128 L. Ed. 2d at 779. The second reason the defendant's reliance on *Kurth Ranch* is invalid is that the court specifically found *Halper*'s definition of punishment did not apply to the tax statute at issue in *Kurth Ranch*. In *Kurth Ranch*, the tax was found to be punishment not because of the *Halper* punitive purpose rule but because of several unusual features of the tax statute. Thus, *Kurth Ranch* does not apply to the situation at hand.

The State also cites to several cases which have wrestled with *Halper*'s definition of "punishment." The strong majority of these cases find that civil sanctions, such as license suspension, do not violate double jeopardy. In so doing, each of these cases enunciated its own versions of what constitutes "punishment." Here is a sampling of what these courts had to say:

*Loui v. Board of Medical Examiners*, 78 Hawaii 21, adopts the restrictive interpretation of *Halper*'s definition of punishment. It takes the viewpoint that a civil sanction qualifies as punishment only if the purpose of the sanction is solely retributive or deterrent. If the sanction has any remedial purpose, then it is not punishment.

*State v. Strong*, 158 Vt. 56, also interprets *Halper* more restrictively than the defendant does. This case finds that a civil sanction is punishment only if its purpose is solely retributive or deterrent. If any part of the sanction's purpose is remedial, then the sanction is not punishment for double jeopardy purposes. The merely incidental retributive or deterrent effects of a civil sanction do not turn the sanction into a "punishment." 158 Vt. at 62 (citing *State v. Nichols*, 169 Ariz. 409, 412, 819 P.2d 995 [Ct. App. 1991]). In fact, *Strong* contends there is a bright line rule that civil license

suspension proceedings are not punishment. 158 Vt. at 62. However, the *Strong* court interpreted *Halper's* definition of "punishment" without the wisdom of *Austin v. United States*, 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801 (1993) (a case which expansively interpreted the Supreme Court's own language in *Halper* as meaning a civil sanction is punishment unless it is solely remedial).

*State v. Miller*, 1995 WL 275770 (Ohio App. 1995), did have the *Austin* precedent to rely on, but it still interpreted the *Halper* definition of punishment restrictively. *Miller* states that a driver's license suspension proceeding is primarily remedial. While such suspension does have the incidental effect of punishing and deterring drunk drivers, these punitive purposes do not qualify the sanction as punishment. In its analysis, *Miller* relies on footnote 7 of the *Halper* case, which states that a court should not determine the purposes of a civil sanction from the defendant's perspective. This footnote states that even remedial measures have a "punishing" effect from the recipient's perspective. In relying on footnote 7, *Miller* indicates that any incidental punitive purposes of a license suspension are not objective punitive purposes, but are only punitive from the defendant's standpoint. Such incidental, subjective, punitive effects cannot be used to determine that a suspension qualifies as "punishment." *Miller* at *3

In focusing on whether the purpose of the suspension sanction is remedial, deterrent, or retributive, this court must determine what type of purpose the sanction serves from an objective viewpoint, not from the defendant's viewpoint. Thus, simply because the loss of one's driver's license may result in loss of employment and other personal problems for the defendant, this does not qualify the sanction as punishment. In an attempt to objectively analyze the suspension's purpose, the State seems to argue that the sanction has a remedial purpose for two reasons. One, the sanction is remedial because it protects the public safety and welfare. Two, the sanction is remedial because it merely revokes a privilege.

First, the State contends the suspension serves a remedial purpose because it protects the public safety and welfare. The State points to Black's Law Dictionary 1293 (6th ed. 1990), which defines

remedial laws or statutes as "that which is designed to . . . introduce regulations conducive to the public good." Moreover, *In re Estate of Brown*, 168 Kan. 612, 215 P.2d 203 (1950), states:

" 'Legislation which has been regarded as *remedial* in its nature include statutes . . . having for their purposes the promotion of justice and the advancement of public welfare and of important and beneficial public objects, such as the *protection of health, morals, and safety of society,* or of the public generally.' " (Emphasis added.) 168 Kan. at 617 (quoting 50 Am. Jur. § 15, p. 33).

According to the State, the suspension sanction protects the public by preventing dangerous drivers from driving and is therefore remedial. In demonstrating that the sanction was promulgated for the public good, the State points to *Lee v. State*, 187 Kan. 566, 358 P.2d 765 (1961), and *State v. Maze*, 16 Kan. App. 2d 527. In *Maze*, 16 Kan. App. 2d at 535, the Court of Appeals noted the purpose of the civil sanction is to foster safety by removing dangerous drivers from the roads. *Lee v. State*, 187 Kan. at 571, found the purpose of the statute is to "promote public safety and welfare."

*Amicus* cites to *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987); *Popp v. Motor Vehicle Department*, 211 Kan. 763, 766, 508 P.2d 991 (1973); *Schowengerdt v. Kansas Dept. of Revenue*, 14 Kan. App. 2d 147, 784 P.2d 387 (1989), and legislative committee testimony to show the suspension sanction was intended to help the public good and thus qualifies as a sanction serving a remedial purpose. For instance, in finding the suspension of a driver's license which occurred before an administrative hearing was not a violation of due process, the *Popp* court stated the purpose of the suspension was to control highway safety. 211 Kan. at 764, 766. *Schowengerdt*, as well, stated that the purpose of the Implied Consent Law is "protecting the safety and welfare of the motoring public." 14 Kan. App. 2d at 148. *Adee* stated the Implied Consent Law should be interpreted broadly in order to enact its public purpose. 241 Kan. at 829. Moreover, *amicus* points to testimony which Galen Davis gave on March 23, 1988. At the time, Mr. Davis was the Governor's Special Assistant on Drug Abuse, and he testified before the Senate Transportation and Utilities Committee concerning the purpose behind the Implied Consent Law. He stated that the ultimate goal of the measures was to protect the

health and safety of Kansas citizens by reducing the incidences of drinking and driving, alcohol-related crashes, injuries, and fatalities.

Finally, *amicus* cites two United States Supreme Court cases which acknowledged the implied consent laws at issue in the cases were enacted to satisfy a public benefit and purpose. *Mackey v. Montrym*, 443 U.S. 1, 17, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979); *Dixon v. Love*, 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723 (1977). In *Mackey* and *Dixon*, drivers had their licenses suspended before an administrative hearing was held. The Supreme Court in *Dixon* found this did not violate due process in light of, *inter alia*, "the important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard." 431 U.S. at 114; see *Mackey*, 443 U.S. at 17;

*Amicus* acknowledges that some Kansas cases have referred to the license suspension sanction as having a deterrent effect. *Furthmeyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 888 P.2d 832 (1994), stated: "The purpose of the implied consent law (K.S.A. 8-1001) is to *coerce* submission to chemical testing through the *threat* of the statutory penalties of license revocation." (Emphasis added.) 256 Kan. at 835 (citing *State v. Bristor*, 236 Kan. 313, Syl. ¶ 3, 691 P.2d 1 [1984]).

The defendant also points to the legislative committee testimony by Galen Davis. While Mr. Davis asserted the ultimate goal of the Implied Consent Law was public safety, as *amicus* previously pointed out, Mr. Davis also stated: "[T]his bill would increase the length of driver's license suspensions in accordance with National Highway Traffic Safety Administration standards for effective DUI *deterrence*." According to the defendant, this testimony indicates the sanction does not have a solely remedial public purpose because one purpose of the sanction is deterrence. Thus, the defendant argues the suspension has a partially punitive purpose and must qualify as punishment for double jeopardy purposes under the expansive *Halper* standard.

Finally, the State attempts to show how the district court was incorrect in its analysis. First, the district court did not rely on *State v. Maze*, 16 Kan. App. 2d 527. *Maze* is a Court of Appeals case

which addressed this exact issue and found that a license suspension was not "punishment" for double jeopardy purposes. 16 Kan. App. 2d at 534. The district court found that *Maze* summarily dismissed the *Halper* rule and instead relied on the distinction between criminal and civil sanctions. Thus, the district court did not rely on *Maze*.

However, *amicus* contends that *Maze* did not dismiss *Halper*. Rather *Maze* applied the standard as explained in *Halper* and found that the civil license suspension did not serve the goals of punishment. We agree. While *Maze* did assert "[t]he facts in *Halper* are materially different from this action, and its holding is not authority," 16 Kan. App. 2d at 535. *Maze* still indicated the purpose of the suspension sanction was remedial. As *Maze* states:

"The revocation of a driver's license is part of a civil/regulatory scheme that serves a vastly different governmental purpose from criminal punishment. Our State's interest is to foster safety by temporarily removing from public thoroughfares those licensees who have exhibited dangerous behavior, which interest is grossly different from the criminal penalties that are available in a driving while under the influence prosecution." 16 Kan. App. 2d at 535.

Even though *Maze* asserts that *Halper* does not apply, the above language seems to indicate the sole purpose of the sanction is the remedial purpose of public safety. It appears the sanction does not qualify as punishment under the *Halper* standard, even if *Maze* would have applied *Halper*.

In finding the civil sanction to be punishment, the district court also found the suspension sanction carried the purposes of deterrence and retribution due to the warnings an officer must provide before the officer can perform a blood alcohol test. Moreover, the district court pointed to the negative consequences which can result if one's driver's license is revoked, such as loss of employment, as an indication that the suspension sanction has deterrent and retributive purposes. According to *amicus*, the district court determined the purposes of the sanction from the viewpoint of the defendant. *Amicus* points out that *Halper* specifically made it clear the court should not determine the purposes of a sanction from the defendant's perspective. Thus, the State and *amicus* contend

that the district court was incorrect in its determination that the sanction served punitive as well as remedial purposes.

We hold the suspension sanction in this case serves a purpose which is solely remedial, in that the sanction's purpose is to protect the public. The suspension sanction quickly removes dangerous drivers from the street to prevent them from injuring anyone. Any harmful effect which the sanction may have on the driver simply indicates that the sanction may appear to be punitive from the driver's perspective. Such harmful effects do not necessarily indicate that the sanction carries purposes of punishment such as deterrence and retribution. While certainly the sanction *may* be interpreted as having punitive effects, this does not mean the sanction *must* be interpreted as having punitive effects. *Hudson*, 14 F.3d at 540. Thus, the sanction does not serve the purpose of punishment. Rather, it protects the public safety as a solely remedial sanction. Moreover, following *Halper's* suggestion as to what factors might make a sanction remedial, the suspension of a driver's license seems proportionate to driving with a .08 or greater blood alcohol concentration.

Next, the State contends the suspension sanction carries a solely remedial purpose because it is simply a revocation of a privilege granted by the State. According to *Emory v. Texas State. Bd. of Medical Examiners*, 748 F.2d 1023, 1026 (5th Cir. 1984), a sanction which revokes a privilege is remedial. In Kansas, a driver's license is not a natural right, but a privilege granted by the State. *Lee v. State*, 187 Kan. at 570-71. If a driver abuses this privilege, the State is entitled to take the privilege away. See *Agee v. Kansas Highway Commission*, 198 Kan. 173, 180, 422 P.2d 949 (1967).

In *Agee*, 198 Kan. at 180, a license suspension was upheld because a driver did not post a security after an accident. In so holding, the court stated:

"Finally, hardship resulting from the suspension of a license, or of a vehicle registration, constitutes no defense to an order suspending either one or both of them. It is established law that the right to operate a motor vehicle upon public streets and highways is not a natural right, but a privilege, subject to reasonable regulation in the public interest. [Citations omitted.] *Being a privilege, the right of operation is subject to suspension when the public interest and welfare reason-*

*ably requires.* Personal hardship has no bearing on the matter. It is self-evident that [the defendant's] complaint of harmful consequences to himself and family furnishes no ground for vacating the Department's order. " (Emphasis added.)

Finally, *Popp v. Motor Vehicle Department*, 211 Kan. at 766, and *Schowengerdt v. Kansas Dept. of Revenue*, 14 Kan. App. 2d at 149, found that driving is not a natural right, but a privilege. If a driver does not abide by the conditions of the privilege, the license is subject to suspension in order to protect public safety and welfare. A sanction which revokes a privilege is a remedial sanction, not a punitive sanction. We hold the sanction in this case is remedial for two reasons. One, it is remedial because it protects the public welfare. Two, it is remedial because the suspension revokes a privilege which is being abused.

The trial court erred in holding double jeopardy principles prevented the State from proceeding with the charge of driving while under the influence of alcohol against the defendant and dismissing the case against him.

Reversed and remanded for trial.