IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,980

STATE OF KANSAS,
*Appellee*,

v.

TRENTON MICHAEL HEIM,
*Appellant*.

SYLLABUS BY THE COURT

Applying *State v. Perkins*, 310 Kan. 764, 449 P.3d 756 (2019), to the circumstances of this case, the good-faith exception to the exclusionary rule applies and allowed the district court to consider the results of a blood test for blood alcohol content even though the Kansas Supreme Court would later hold that K.S.A. 2015 Supp. 8-1025 was unconstitutional.

Review of the judgment of the Court of Appeals in an unpublished opinion filed April 20, 2018. Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed November 20, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, was on the briefs for appellant.

*Andrew R. Davidson*, assistant district attorney, *Keith E. Schroeder*, former district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

1

The opinion of the court was delivered by

LUCKERT, C.J.: In this appeal, Trenton Michael Heim argues a warrantless blood test obtained under the implied consent statute was unconstitutional per *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016); *State v. Ryce*, 306 Kan. 682, 699-700, 396 P.3d 711 (2017) (*Ryce II*); and *State v. Nece*, 306 Kan. 679, 681, 396 P.3d 709 (2017) (*Nece II*). But the State argues the district court could consider the blood test results because the good-faith exception to the exclusionary rule allowed the district court to consider the results of Heim's blood test. *State v. Heim*, No. 115,980, 2018 WL 1884093 (Kan. App. 2018) (unpublished opinion).

Heim asks us to reverse the panel's holding that the good-faith exception applies. Heim recognizes this court's holding in *State v. Perkins*, 310 Kan. 764, 449 P.3d 756 (2019), in which we held the good-faith exception applies to breath tests for blood alcohol content collected under the unconstitutional implied consent statute. But Heim asks us to revisit *Perkins*. In doing so, he does not base any of his arguments on the differences between blood and breath tests, and he does not persuade us to abandon our recent decision in *Perkins*. We thus affirm the Court of Appeals' and the district court's decisions to allow consideration of the blood test results, which presumptively showed Heim was guilty of DUI.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2015, a law enforcement officer investigating a vehicle crash involving Heim arrested Heim for driving under the influence (DUI). The officer gave Heim the statutorily required implied consent advisories, both orally and through the written DC-70 form. Heim requested a blood test, which was drawn at a hospital. Officers did not get a

2

search warrant. The sample, taken within three hours of driving, measured .19 grams per 100 milliliters of blood.

Heim filed a motion to suppress the blood test results as unconstitutional. The district court denied the motion and conducted a bench trial on stipulated facts. The district court found Heim guilty of DUI.

The Court of Appeals affirmed. *State v. Heim*, No. 115,980, 2018 WL 1884093 (Kan. App. 2018) (unpublished opinion). On appeal, Heim argued the blood test was unconstitutional. See *Birchfield,* 136 S. Ct. 2160; *Ryce II*, 306 Kan. at 699-700; *Nece II*, 306 Kan. at 681. But, for the first time on appeal, the State argued the good-faith exception applied and allowed the district court to consider the results of the blood test. Heim argued the State could not raise the exception for the first time on appeal and that it did not apply. The Court of Appeals panel rejected both arguments.

First, the panel held that the State could raise the good-faith exception for the first time on appeal because the United States Supreme Court had not decided *Birchfield* before Heim's arrest and there was no reason for the State to raise the issue. It was thus a newly relevant theory and involved only a question of law. 2018 WL 1884093, at *2. Second, the panel held the good-faith exception applied because there was no reason for the officer to know the statute would be found unconstitutional. The panel thus affirmed the conviction. 2018 WL 1884093, at *4.

Heim petitioned for review, arguing the Court of Appeals panel erred in holding the good-faith exception applied. He did not seek our review of the holding that the State could raise the exception for the first time on appeal and has thus waived our consideration of that issue. *In re A.A.-F.*, 310 Kan. 125, 134, 444 P.3d 938 (2019); see

also Supreme Court Rule 8.03(b)(6)(C)(i) (2020 Kan. S. Ct. R. 54) ("The Supreme Court will not consider issues . . . not presented or fairly included in the petition for review.").

As to remaining question of whether the good-faith exception applies, after granting review over the Court of Appeals' decision, this court held in *Perkins*, 310 Kan. 764, that the good-faith exception to the exclusionary rule allowed courts to consider evidence from breath tests obtained in reliance on the unconstitutional implied consent statute. After that decision, we asked Heim and the State to show cause why *Perkins* does not control the outcome of this appeal. Heim asked us to revisit *Perkins*.

ANALYSIS

To provide context to Heim's request and our review, we begin by summarizing legal developments about the constitutional issues raised by implied consent laws and blood alcohol (BAC) testing of impaired drivers up through this court's decision in *Perkins*. Two lines of cases are relevant:  (1) those defining BAC testing as a search and (2) cases discussing the good-faith exception.

1. *Search*

Several cases establish that a test for blood alcohol content is a search. E.g., *Birchfield*, 136 S. Ct. at 2173; *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). This point is critical to Heim's argument because the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches. And a warrantless search is per se unreasonable unless a valid exception to the Fourth Amendment applies. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *State v.*

*Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Recognized exceptions in Kansas include consent, search incident to lawful arrest, and exigent circumstances, among others. *Neighbors*, 299 Kan. at 239.

*Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), was the United States Supreme Court's "first foray into considering intrusions into the human body." *State v. Ryce*, 303 Kan. 899, 920, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*). In that case, officers obtained a blood test from a driver over his objection; the Court held that—under the particularized facts of that case—the warrantless search fell into the exigent circumstances exception to the Fourth Amendment warrant requirement. 384 U.S. at 770-72; see also *Birchfield*, 136 S. Ct. at 2174 (*Schmerber*'s exigent circumstances exception by its nature requires case-by-case analysis and is not categorical); *Missouri v. McNeely*, 569 U.S. 141, 156, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013) (same).

After *Schmerber*, legislatures enacted implied consent laws, eventually in all 50 states, because states recognized that "the cooperation of the test subject is necessary when a breath test is administered and highly preferable when a blood sample is taken." *Birchfield*, 136 S. Ct. at 2168. Typically, these laws sought to secure this consent through revoking or suspending a driver's license as a penalty for withdrawal of the consent because every motorist impliedly consents to the testing as a condition of the privilege of driving on public roads. 136 S. Ct. at 2169; *State v. Adee*, 241 Kan. 825, 831, 740 P.2d 611 (1987).

This was fine, constitutionally, until the Kansas Legislature enacted criminal sanctions for the withdrawal of consent. As the term "implied consent" suggests, these laws hinge on the consent exception to the Fourth Amendment warrant requirement. For

5

consent to be valid, a person must be able to withdraw consent. *Ryce I*, 303 Kan. at 932. In *Ryce I*, the court held that the statutory language in K.S.A. 2014 Supp. 8-1025 which criminalized the driver's withdrawal of consent to BAC testing was unconstitutional. 303 Kan. at 963. In *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g*, 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*), the court held that the unconstitutional threat of criminal sanctions in K.S.A. 2014 Supp. 8-1025 unduly coerced a driver's consent to BAC testing, making it involuntary. 303 Kan. at 889.

Then, in *Birchfield*, the United States Supreme Court held that warrantless breath tests are constitutionally permissible under the search incident to arrest exception to the Fourth Amendment warrant requirement, and therefore such searches are a categorical exception to the warrant requirement. 136 S. Ct. at 2185. The Court did not include blood tests in this holding because blood tests are far more intrusive. 136 S. Ct. at 2185.

We reaffirmed *Ryce I* and *Nece I* after rehearings to consider the effect of *Birchfield*. *Ryce II*, 306 Kan. at 700; *Nece II*, 306 Kan. at 681. *Ryce II* pointed out that *Birchfield* concerned the search incident to arrest exception, while *Ryce I* and *Nece I* concerned the consent exception. The statute's criminalization of withdrawal of consent was thus still unconstitutional, although in *Ryce II* we recognized that warrantless breath tests could be constitutionally permissible as searches incident to arrest. 306 Kan. at 699-700.

This led to several appeals of DUI convictions in which officers procured the BAC test under the unconstitutional threat of criminal sanctions in K.S.A. 2015 Supp. 8-1025, *repealed by* L. 2019, ch. 13, § 5. The State began to argue that the good-faith exception to the exclusionary rule should apply because the officers had no reason to know that this

6

court would declare K.S.A. 2015 Supp. 8-1025 unconstitutional, often years after the arrest.

2. *Good-Faith Exception*

Neither the Fourth Amendment nor § 15 of the Kansas Constitution Bill of Rights address the proper remedy for a warrantless search. The exclusionary rule is a judicially created remedy that deters unconstitutional searches because it prevents the use of unconstitutionally obtained evidence at trial. *Krull*, 480 U.S. at 347; *Daniel*, 291 Kan. at 496. But the exclusionary rule does not always apply, including when the good-faith exception allows the court to consider the evidence. *Krull*, 480 U.S. at 349-50; *Daniel*, 291 Kan. at 499-500.

In *Leon*, the Supreme Court held an officer's reasonable, good-faith reliance on a search warrant insulated the evidence from the exclusionary rule even though a court later found the warrant invalid. 468 U.S. at 922-23. The Supreme Court made clear that a court should apply the exclusionary rule only when doing so deters law enforcement officers from acting in an unconstitutional manner. 468 U.S. at 906. The Court thus reserved the exclusionary remedy for circumstances in which a court "has examined whether the rule's deterrent effect will be achieved, and has weighed the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process." *Krull,* 480 U.S. at 347. Because this weighing is fact-specific, "suppression of evidence . . . should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918.

7

In *Krull*, the United States Supreme Court expanded the *Leon* good-faith exception to include an officer's reasonable reliance on an unconstitutional statute. 480 U.S. at 349-50. The United States Supreme Court held, under the circumstances of that case, excluding evidence obtained when police are enforcing a statute later found to be unconstitutional would not serve the rule's purpose because it would have no deterrent effect on law enforcement. 480 U.S. at 349. The *Krull* Court explained:

"Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written. To paraphrase the Court's comment in *Leon*: 'Penalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.' [Citation omitted.]" 480 U.S. at 349-50.

The *Krull* Court recognized a new body of actors other than law enforcement that played a role in statutes: legislators. A new issue thus arose as to whether applying the exclusionary rule would deter legislators from enacting unconstitutional statutes. In analyzing that question, the Court first reasoned that legislators take an oath to uphold the Constitution and courts presume legislators act constitutionally. 480 U.S. at 351. The Court was thus "not willing to assume now that there exists a significant problem of legislators who perform their legislative duties with indifference to the constitutionality of the statutes they enact." 480 U.S. at 352 n.8.

Even so, the *Krull* Court acknowledged a point made by the dissenters and recognized situations might arise in which a legislature enacted an obviously unconstitutional statute because the legislature yielded "to the temptation offered by the

8

Court's good-faith exception." 480 U.S. at 366 (O'Connor, J., joined by Brennan, Marshall, and Stevens, JJ., dissenting). But the Court concluded the objectively reasonable reliance requirement of *Leon* allowed courts to consider the circumstances and, where appropriate, apply the exclusionary rule:

> "A statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws. Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional. [Citation omitted.] As we emphasized in *Leon*, the standard of reasonableness we adopt is an objective one; the standard does not turn on the subjective good faith of individual officers. [Citation omitted.]" 480 U.S. at 355.

Examining the circumstances in *Krull*, the Court held the officer's reliance on the statute was objectively reasonable. 480 U.S. at 360. Several factors led to that conclusion: Caselaw had supported similar statutes, the statute appeared to be aimed at a legitimate state purpose, and the constitutional infirmity with the statute was not "sufficiently obvious so as to render a police officer's reliance upon the statute objectively unreasonable." 480 U.S. at 358-59.

This court adopted the *Krull* expansion of the good-faith exception to excuse an officer's reasonable reliance on a statute in *Daniel*, 291 Kan. at 499-500. There, police conducted a post-arrest search of a motorist's car under a statute that, at the time, allowed such searches of vehicles after an arrest. The statute was later struck down as unconstitutional, but *Daniel* held that the officer's reliance on the statute was reasonable at the time given prior caselaw that supported vehicle searches after an arrest. 291 Kan. at 505; see also *State v. Dennis,* 297 Kan. 229, 230, 300 P.3d 81 (2013) (officer need not

specifically articulate statute authorizing search if an objectively reasonable officer could rely on a statute).

*Daniel* was not unanimous. The dissent would have held this court need not always afford the same protections under § 15 of the Kansas Constitution as the United States Supreme Court allows under the Fourth Amendment even though we had traditionally done so. The dissent would not extend the good-faith exception to encompass an officer's reliance on a statute because to do so requires police—members of the executive branch—to perform the judicial function of statutory interpretation. 291 Kan. at 506-07 (Johnson, J., dissenting). According to the dissent, in Candy Daniel's situation, the law enforcement officer's reliance was not solely on statutory text but also on previous judicial interpretations of United States Supreme Court precedent. 291 Kan. at 507-08 (Johnson J., dissenting).

Then, in *State v. Pettay*, 299 Kan. 763, 772, 326 P.3d 1039 (2014), this court declined to extend *Daniel* because the search in *Pettay* exceeded the scope authorized by the statute. A concurring opinion in *Pettay* reiterated the objection to the *Daniel* court's expansion of the good-faith exception and disagreed with the concept that the only purpose of the exclusionary rule was to deter police misconduct. The concurring opinion noted that other functions of the exclusionary rule include preservation of judicial integrity and preventing the government from profiting from fruits of lawless behavior. 299 Kan. at 772-73 (Johnson, J., concurring).

Next came *Perkins*, 310 Kan. 764. There, we applied the good-faith exception to warrantless breath tests obtained under K.S.A. 2012 Supp. 8-1025. 310 Kan. at 770-71. The concurring opinion in *Perkins* cited the *Daniel* dissent and suggested that it may be time to revisit "whether Kansas should continue to apply the good-faith exception in

10

lockstep with federal caselaw." But the parties had not raised those arguments, so a unanimous court applied the good-faith exception. *Perkins*, 310 Kan. at 771-72 (Luckert, J., concurring).

*Perkins* concerned breath tests and did not discuss blood tests. Heim seeks to suppress his blood test and questions whether the *Leon* good-faith exception also applies to warrantless blood tests obtained under K.S.A. 2015 Supp. 8-1025. But he raises no arguments suggesting the difference between a blood and a breath test could lead to a different application of the good-faith exception.

Instead, he asks us to reverse *Perkins*. Heim's counsel also represents Ronald S. Ary in an appeal we decide today. *City of Kingman v. Ary*, 312 Kan. ___, ___ P.3d ___ (No. 114,413, this day decided). Heim and Ary present identical arguments about the legal question of whether the good-faith exception applies, and our analysis is likewise identical in most respects, although the facts of each case require a separate analysis. Appellate courts consider legal arguments de novo. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018) (appellate courts review district court's factual findings related to motion to suppress to determine whether they were supported by substantial competent evidence, but the ultimate legal conclusion is a question of law reviewed de novo).

In asking us to reverse *Perkins*, Heim and Ary face a difficult task. "We do not overrule precedent lightly and must give full consideration to the doctrine of stare decisis." *State v. Sherman*, 305 Kan. 88, 107, 378 P.3d 1060 (2016). This is largely because "'[t]he application of stare decisis ensures stability and continuity— demonstrating a continuing legitimacy of judicial review. Judicial adherence to constitutional precedent ensures that all branches of government, including the judicial branch, are bound by law.'" *Crist v. Hunan Palace, Inc*., 277 Kan. 706, 715, 89 P.3d 573

(2004) (quoting *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 356, 789 P.2d 541 [1990]).

Even so, stare decisis "is not a rigid inevitability but a prudent governor on the pace of legal change." *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 (2016). This court will generally follow its precedent unless "'clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *Crist*, 277 Kan. at 715 (quoting *Samsel*, 246 Kan. at 356).

Heim and Ary cite no change in conditions since *Perkins*, which we decided just one year ago. But they do argue that *Perkins* was originally erroneous. In doing so, they present three arguments.

First, they reiterate the points made in the *Perkins* concurring opinion and in the dissent in *Krull*, 480 U.S. at 362 (O'Connor, J., joined by Brennan, Marshall, and Stevens, JJ., dissenting) ("Unlike the Court, I see a powerful historical basis for the exclusion of evidence gathered pursuant to a search authorized by an unconstitutional statute. Statutes authorizing unreasonable searches were the core concern of the Framers of the Fourth Amendment."). But the *Krull* dissent did not persuade the United States Supreme Court majority, largely because of the majority's assumption that legislators follow their oaths and courts presume statutes constitutional. 480 U.S. at 351-52. Plus, the *Krull* majority carved an exception for situations in which reliance on those assumptions was not objectively reasonable. 480 U.S. at 355. And in relying on *Krull*, this court in *Perkins*, 310 Kan. at 770 (discussing *Krull*), and *Daniel*, 291 Kan. at 499-500 (same), at least implicitly determined the *Krull* dissent was not persuasive. Nor did a majority find the *Perkins* concurring opinion persuasive. Heim offers no new argument.

12

Second, Heim and Ary argue the officer could not have acted in good faith because K.S.A. 2015 Supp. 8-1025 was clearly unconstitutional. They assert the officer should have realized 8-1025 was unconstitutional and that the Legislature had abandoned its duty to pass constitutional laws. But this situation is like *Krull* and *Daniel* where judicial precedent gave the officer an objectively reasonable basis to rely on and enforce the statute. *Krull*, 480 U.S. at 355-58; *Daniel*, 291 Kan. at 499; see *Davis v. United States*, 564 U.S. 229, 240, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011) ("The police acted in strict compliance with binding precedent, and their behavior was not wrongful. Unless the exclusionary rule is to become a strict-liability regime, it can have no application in this case.").

For example, in considering K.S.A. 2015 Supp. 8-1025, the Kansas Court of Appeals had held a DUI defendant has "no constitutional right to refuse to be tested." *State v. Bussart-Savaloja,* 40 Kan. App. 2d 916, 927-28, 198 P.3d 163 (2008). And, at the time of Heim's arrest, Kansas courts had consistently upheld the constitutionality of warrantless blood draws undertaken under K.S.A. 2015 Supp. 8-1001. See, e.g., *Martin v. Kansas Dept. of Revenue,* 285 Kan. 625, 176 P.3d 938 (2008); *Popp v. Motor Vehicle Department,* 211 Kan. 763, 508 P.2d 991 (1973).

When the officer arrested Heim, the officer had no reason to know this court would hold that the implied consent advisories were impermissibly coercive 10 months after Heim's arrest. Further, Kansas statutory implied consent law is not unique. Other states had statutes like K.S.A. 2015 Supp. 8-1025 and continued to uphold them until the United States Supreme Court ruled in *Birchfield* that these types of criminal penalty laws are unenforceable as to blood tests. See, e.g., *Wing v. State,* 268 P.3d 1105, 1109-10 (Alaska App. 2012) (upholding the constitutionality of an Alaska statute criminalizing the

13

refusal to submit to blood-alcohol test); *State v. Bernard,* 859 N.W.2d 762, 774 (Minn. 2015) (Minnesota statute that criminalizes refusal to submit to blood-alcohol test passes rational basis review).

The Kansas implied consent statutes were not so clearly unconstitutional at the time of Heim's arrest that a reasonably well-trained officer would have known that they were unconstitutional. By giving the advisories and informing Heim that the State could charge him with a separate crime for refusing to submit to a blood test, the officer was merely fulfilling his responsibility to enforce the statutes as written, and suppression of the evidence would not serve the deterrent aim of the exclusionary rule.

For these same reasons, the Kansas Legislature did not wholly abandon its responsibility to pass constitutional laws.

Finally, Heim argues more harm than good will result from *Perkins* because "who now would ever spend the time and money to challenge an unconstitutional statute under the Fourth Amendment?" But this argument ignores cases such as *Pettay*, 299 Kan. 772, in which we held the good-faith exception did not apply. The *Krull* majority noted the similar argument raised by Justice O'Connor: "Providing legislatures a grace period during which the police may freely perform unreasonable searches in order to convict those who might have otherwise escaped creates a positive incentive to promulgate unconstitutional laws." 480 U.S. at 366 (O'Connor, J., joined by Brennan, Marshall, and Stevens, JJ., dissenting). The *Krull* majority countered that the exceptions it had created left a path for courts to exclude the evidence because the good-faith exception did not apply. See 480 U.S. at 355 (citing circumstances where Legislature "wholly abandoned its responsibility to enact constitutional laws" and law enforcement officer's reliance was not objectively reasonable).

14

We have previously considered and rejected many of Heim's and Ary's arguments. They offer no persuasive reason for us to abandon *Perkins*. We hold the Court of Appeals did not err in applying the good-faith exception, and the district court did not err in holding Heim's blood test result was admissible.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

BEIER, J., not participating.
MICHAEL E. WARD, Senior Judge assigned.[1]

* * *

STEGALL, J., concurring: I agree with today's holding that the good faith exception applies in this case. I continue, however, to disagree with the conclusion that this search was unconstitutionally coerced. See *State v. Ryce*, 303 Kan. 899, 971-72, 368 P.3d 342 (2016) (Stegall, J., dissenting) ("Because it is reasonable to conclude that [K.S.A. 2013 Supp. 8-1025] prohibits conduct, in some circumstances, that is not constitutionally protected, the constitutionality of the statute can only be determined on a case-by-case, as applied, basis and we should not declare the statute to be facially unconstitutional."). As such, I concur in the result.

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 115,980 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.